IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

NOV 1 3 2008

CLERK, U.S DISTRICT COURT
ALEXANDRIA, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. **1:08cr426** |
| | ) | |
| v. | ) | **Honorable Gerald Bruce Lee** |
| | ) | |
| NAVID MAHDAVI, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, NAVID MAHDAVI, agree that were this matter to proceed to trial, the United States would prove the following facts beyond a reasonable doubt.

## I.  BACKGROUND

At all times relevant to this case:

1.  United Bank was a financial institution as defined in Title 18, United States Code, Section 20, in that it is an insured depository institution whose accounts were insured by the Federal Deposit Insurance Corporation.

2.  United Bank's Tyson's Corner branch was located at 2071 Chain Bridge Road, Vienna, Virginia.

3.  The subject property was located at 9204 Redwood Avenue, Bethesda, Maryland ("Redwood Avenue Property").

4.  Excelente Settlements, Inc. was a settlement company located in Rockville, Maryland.

5.  Defendant NAVID MAHDAVI ("MAHDAVI") resided in Vienna, Virginia.

1

Case 1:08-cr-00426-GBL Document 5 Filed 11/19/08 Page 2 of 5 PageID# 19

## II.   DEFENDANT MAHDAVI'S CRIMINAL CONDUCT

6.   In or about April 2008, within the Eastern District of Virginia and elsewhere, MAHDAVI and his coconspirators agreed to defraud various banks, including United Bank's Tyson's Corner branch, by obtaining fraudulent home equity loans on the Redwood Avenue Property, which in fact, held no equity.

## MANNER AND MEANS OF THE CONSPIRACY AND THE SCHEME TO DEFRAUD

7.   Specifically, MAHDAVI's coconspirators, with MAHDAVI's knowledge and agreement, created a fraudulent HUD-1 that showed MAHDAVI as having (already) closed on a first mortgage on the Redwood Avenue Property.

8.   In addition to the HUD-1, MAHDAVI's coconspirators, with MAHDAVI's knowledge and agreement, created fraudulent tax returns and bank statements, and fraudulently bolstered his income, credit score and assets so that MAHDAVI could obtain numerous and fraudulent home equity loans on the Redwood Avenue Property, which he did not own.

9.   MAHDAVI's coconspirators, with MAHDAVI's knowledge and agreement, filed simultaneous loan applications and supporting documents, totaling approximately $5.5 million, with approximately ten banks, each unknown to the others, including United Bank's Tyson's Corner office, under the pretext that each bank's loan was the *only* home equity loan being obtained and that it was secured by the Redwood Avenue Property.

2

Case 1:08-cr-00426-GBL Document 59 Filed 11/19/08 Page 3 of 5 PageID# 206

## OVERT ACTS

10. In or about March 2008, MAHDAVI's coconspirators, with MAHDAVI's knowledge and agreement, submitted fraudulent and material supporting documents, including the fraudulent HUD-1, to various banks, including United Bank's Tyson's Corner branch, in order to obtain home equity loans on the Redwood Avenue Property.

11. In or about April 2008, MAHDAVI sent a copy of his federal tax return from his home fax machine in Vienna, Virgina (703-XXX-XXXX) to a coconspirator's office in Potomac, Maryland. At the time MAHDAVI sent the facsimile, he understood that his coconspirator would fraudulently alter his tax return for the purpose of fraudulently obtaining home equity loans on the Redwood Avenue Property.

## RELEVANT CONDUCT

(A)    Fraudulent 2006 Home Equity Loan

12. In or about December 2006, MAHDAVI and a coconspirator fraudulently applied for a $500,000 home equity loan secured by MAHDAVI's residence on Fairway Drive in Vienna, Virginia.    MAHDAVI and his coconspirator fraudulently bolstered MAHDAVI's credit score in order to obtain the loan, which MAHDAVI would otherwise have not qualified.

13. As a result, MAHDAVI personally received $490,000 in fraudulent proceeds.

## DEFENDANT MAHDAVI'S VOLUNTARY DISCLOSURE

14. On May 30, 2008, MAHDAVI voluntarily disclosed to the FBI the above described conspiracy and scheme to defraud prior to the scheme's execution. Based on that timely information, and MAHDAVI's willingness to cooperate, the FBI was able to collect evidence proactively and to warn the targeted banks in advance of the scheme to defraud.

3

## III. INTENT

15. MAHDAVI's criminal conduct, as recounted above and including that described under "Relevant Conduct," was in all respects intentional, knowing, and deliberate, reflecting an intention to violate the law, and was not a product of oversight, misunderstanding, or other innocent reason.

## IV. TOTAL LOSS

16. The parties agree that the total loss in this matter is greater than $400,000 but less than $7,000,000.

Respectfully submitted,

Dana Boente
Acting United States Attorney

By:

G. Derek Andreson
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Navid Mahdavi
Defendant

4

Case 1:08-cr-00426-GBL Document 5 Filed 11/19/08 Page 5 of 5 PageID#22

I am Navid Mahdavi's attorney. I have carefully reviewed the above Statement of Facts with my client. To my knowledge, my client's decision to stipulate to these facts is an informed and voluntary one.

Jonathan Shapiro, Esquire