**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**JODI C. MAHDAVI,**

    **Plaintiff,**

v.                                                                              Case No.: 1:14-cv-00648-TSE-TCB

**NEXTGEAR CAPITAL, INC.,** *et al.***,**

    **Defendants.**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT P.A.R. SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant P.A.R. Services, Inc. ("PAR"), by undersigned counsel, under Fed. R. Civ. P. 56, and hereby requests that this Court enter an Order awarding it summary judgment as against all claims in Plaintiff Jodi C. Mahdavi's Complaint, and in support thereto states as follows:

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1. PAR hereby adopts and incorporates by reference the Statement of Material Facts Not In Dispute contained in the Motion for Summary Judgment filed by Defendant NextGear Capital, Inc. ("NextGear").

2. PAR is a repossession company. *See* Deposition of P.A.R. Services, Inc. ("PAR Dep."), pertinent portions attached hereto as **Exhibit One**, p. 6:4-5.

3. PAR repossessed the subject BMW at NextGear's direction, delivered the vehicle to BW Manheim at NextGear's direction, and has had no further involvement with the vehicle. *See id.* at pp. 35:6-38:4. Therefore, PAR does not have possession or control of the BMW and is not able to sell the vehicle.

4. PAR did not remove anything from the BMW, which now resides with BW Manheim. *See* id. at p. 34:15-22. There was only some paperwork and boxing gloves in the BMW of negligible value. *See id.* at p. 33:18-19.

5. There is no evidence that PAR's repossession ever breached the peace. *See* Transcript of Plaintiff's Deposition, pertinent portion attached hereto as **Exhibit Two**, at pp. 72:13-74:21 (describing circumstances of the repossession).

## ARGUMENT

PAR hereby adopts and incorporates by reference the Argument set forth in NextGear's Motion for Summary Judgment. As set forth therein, Plaintiff cannot show that she has good title to the BMW and is entitled to a return of the vehicle.

PAR is entitled to summary judgment as to Count I of Plaintiff's Complaint because PAR does not have possession or control of the BMW and is not able to sell the vehicle. Thus, it would be inappropriate to issue an injunction to prevent PAR from doing what it cannot do.

PAR is entitled to summary judgment as to Count II of Plaintiff's Complaint because PAR does not claim any right or title to the BMW. PAR merely repossessed the BMW at NextGear's direction, and NextGear has right and title to the BMW for the reasons stated in NextGear's Motion for Summary Judgment.

PAR is entitled to summary judgment as to the trespass component of Count III of Plaintiff's Complaint because PAR lawfully entered upon Plaintiff's property and repossessed the BMW pursuant to NextGear's legal claim to that BMW, and was permitted under the law to thereby repossess it. *See* Va. Code § 6.2-2217. Even under Plaintiff's own recollection, there is no evidence that PAR's repossession breached the peace or was otherwise inappropriately handled.

In addition, PAR is entitled to summary judgment as to the conversion component of Count III of Plaintiff's Complaint because Plaintiff cannot prove she has good title to the BMW, as set forth in NextGear's Motion for Summary Judgment. As to the personal property Plaintiff claims was in the BMW at the time it was repossessed, Plaintiff's unsubstantiated allegations, without more, are insufficient to meet her burden of proving that there was any personal property in the BMW other than the paperwork and boxing gloves of negligible value.

WHEREFORE, Defendant P.A.R. Services, Inc. respectfully requests that this Court enter an Order granting summary judgment in favor of P.A.R. Services, Inc. as against Plaintiff Jodi C. Mahdavi as to all counts of Plaintiff's Complaint, along with any other relief this Court deems just and necessary.

Dated: December 3, 2014.                    Respectfully submitted,

                                             P.A.R. SERVICES, INC.,
                                             By counsel:

                                             */s/ James N. Markels*
                                             James N. Markels (VA Bar No. 68399)
                                             JACKSON & CAMPBELL, P.C.
                                             1120 20th Street, N.W.
                                             South Tower, Third Floor
                                             Washington, D.C. 20036-3437
                                             Telephone: (202) 457-1600
                                             Facsimile: (202) 457-1678
                                             Email: jmarkels@jackscamp.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of December, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF System, which will then send a notification of such filing (NEF) to:

      Jonathan E. Levine, Esquire (VA Bar No. 45572)
      LEVINE, DANIELS & ALLNUTT, PLLC
      5311 Lee Highway
      Arlington, Virginia 22207
      Telephone: (703) 525-2668
      Facsimile: (703) 525-8393
      jonathan.levine@levinedaniels.com
      *Counsel for Plaintiff Jodi C. Mahdavi*

      James D. Bragdon, Esquire
      GALLAGHER, EVELIUS & JONES, LLP
      218 North Charles Street, Suite 400
      Baltimore, Maryland 21201
      Telephone: (410) 727-7702
      Facsimile: (410) 468-2786
      jbragdon@gejlaw.com
      *Counsel for Defendant NextGear Capital, Inc.*

      */s/ James N. Markels*
      James N. Markels (VA Bar No. 68399)
      JACKSON & CAMPBELL, P.C.
      1120 20th Street, N.W.
      South Tower, Third Floor
      Washington, D.C. 20036-3437
      Telephone: (202) 457-1600
      Facsimile: (202) 457-1678
      Email: jmarkels@jackscamp.com
      *Counsel for Defendant P.A.R. Services, Inc.*

2901721v.1

# EXHIBIT ONE



# PLANET DEPOS
## We Make It Happen » Anywhere™

## Transcript of **APRIL MARIE RECTOR**

**Date:** November 17, 2014

**Case:** MAHDAVI v. NEXTGEAR CAPITAL, INC., ET AL

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: www.planetdepos.com

Court Reporting | Videography | Videoconferencing | Interpretation | Transcription

DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

2 (Pages 5 to 8)

### Page 5

```
 1              PROCEEDINGS
 2           APRIL MARIE RECTOR
 3   having been duly sworn/affirmed, testified as
 4            follows:
 5       EXAMINATION BY COUNSEL FOR PLAINTIFF
 6   BY MR. LEVINE:
 7       Q   Would you please state your name.
 8       A   Sure, it's April Marie Rector.
 9       Q   And who is your employer?
10       A   PAR Services.
11       Q   And where is PAR Services located?
12       A   We're in Clinton, Maryland.
13       Q   And do you work in Clinton, Maryland?
14       A   I do.
15       Q   And what's the address in Clinton?
16       A   6504 Yochelson Place. And the zip code is
17   20735.
18       Q   And what's your job title?
19       A   Manager.
20       Q   And what are your day-to-day
21   responsibilities?
22       A   Day-to-day, just kind of watch over
```

### Page 6

```
 1   everything, any problems that come in I take care of,
 2   handle the insurance. Just managing the office
 3   employees, things of that nature.
 4       Q   What kind of business is PAR Services?
 5       A   It's a repossession company.
 6       Q   Does it do general towing or just
 7   repossessions?
 8       A   Just repossessions.
 9       Q   And how long have you been at PAR Services?
10       A   I've been there 15 years.
11       Q   And how long have you been a manager there?
12       A   About ten years.
13       Q   So you were a manager in May of 2014?
14       A   Yes.
15       Q   And are you familiar with the facts and
16   circumstances of this case?
17       A   Yes.
18       Q   Okay. And I would like for you to take a
19   look at what's been marked as PAR 1.
20           (PAR Exhibit 1 was marked for
21   identification and attached to the deposition
22   transcript.)
```

### Page 7

```
 1           MR. MARKELS: Is there a question pending?
 2   I'm sorry.
 3           MR. LEVINE: I just asked her if she could
 4   review it.
 5       A   Sure.
 6           Okay. Yes.
 7   BY MR. LEVINE:
 8       Q   Have you seen this document before?
 9       A   I don't recall seeing this one before.
10       Q   Do you understand you're here as the
11   corporate representative for PAR Services?
12       A   Yes.
13       Q   And to give testimony on the subject
14   matters that are identified in this notice of
15   deposition?
16       A   Yes. I've gotten so many documents on it,
17   so everything kind of looks the same; but I
18   understand why I'm here.
19       Q   Sure. Now, the notice of deposition
20   identifies several subject matters that you're called
21   on to give testimony to. And are you here to give
22   testimony on each of these items?
```

### Page 8

```
 1       A   In this deposition here?
 2           MR. MARKELS: To the extent that PAR knows
 3   them.
 4       A   Yes, so whatever questions I can answer.
 5           MR. LEVINE: I'll just ask you, don't
 6   instruct your witness. You can give an objection.
 7           MR. MARKELS: I'm just saying, she can only
 8   testify as PAR's representative as to what PAR knows
 9   personally.
10           MR. LEVINE: I understand. That's a
11   direction telling your witness how to testify. You
12   can object, that's fine. I would appreciate it if
13   you would not give instructions like that.
14   BY MR. LEVINE:
15       Q   Are there any of the designations that you
16   are unable to testify to?
17           MR. MARKELS: I'm going to object as to
18   form. Go ahead and answer.
19       A   Can you repeat that question one more time?
20   I'm sorry.
21   BY MR. LEVINE:
22       Q   Sure. Of the subject matters that are
```

**33**

1   Q   And who is that?
2   A   His name is Joseph Atchison.
3   Q   Did PAR Services perform any kind of
4   inventory of the contents of the vehicle?
5   A   When the vehicle initially came in, it was
6   locked, and it remained locked for several days,
7   until we received something in the mail stating -- it
8   was like a certified letter I think Ms. Mahdavi had
9   sent in stating that she had some money and jewelry
10  in the vehicle. And so it was at that time that we
11  had the vehicle -- because it's a very hard
12  vehicle -- when it's locked up, it's very hard to
13  gain access to.
14      So once we received the certified letter,
15  and I don't remember which one of our guys, a guy who
16  worked for us, I don't remember which one it was,
17  opened it up. I was out there when they opened it
18  up. And the only thing that was in that vehicle was
19  some paperwork and a pair of boxing gloves.
20      Now, we could not -- did not gain access to
21  the trunk.
22  Q   So you were present when the car was

**34**

1   opened?
2   A   I was.
3   Q   And how was it opened?
4   A   It's called a break-in kit. It's a wire,
5   and they have to -- there's a wedge that they use to
6   kind of get the vehicle -- they have to create like a
7   pocket so they can get a tool in that unlocks the
8   vehicle.
9   Q   And I'm sorry, did you say you don't
10  remember who --
11  A   I don't remember, no. I don't.
12  Q   Okay. Do you have multiple employees who
13  would use the kit?
14  A   Yes, we do.
15  Q   And what was done with the contents of the
16  vehicle?
17  A   The contents of the vehicle? They remained
18  in the vehicle. We didn't take the contents out.
19  They remained in the vehicle and the vehicle was sent
20  to Manheim Auction. We notified NextGear what was in
21  there and left it in there. We did not remove
22  anything.

**35**

1   Q   Who wrote down the inventory?
2   A   I did.
3   Q   Do you recall whether there was a child
4   seat in the car?
5   A   There was not.
6   Q   How long was the BMW on PAR Services's
7   property?
8   A   I'm going to revert back to the documents
9   here. Let's see. We repossessed it on I believe --
10  this is a fax copy. It looks like May 20th. Yes.
11  May 20th is the date it was repossessed and it was
12  delivered to the auction on May 30th. So 5/20, 2014,
13  until 5/30, 2014, is when it remained in PAR's
14  possession.
15  Q   Do you know why PAR Services had it for ten
16  days?
17  A   We generally -- whenever we repossess a
18  vehicle, it generally sits on our lot until our
19  client requests that we deliver it.
20  Q   So who made the request that it be
21  delivered?
22  A   Dave Freeman requested the delivery.

**36**

1   Q   And his request was to take it to BW --
2   Baltimore-Washington Manheim?
3   A   Correct. BW Manheim, I get it confused
4   too.
5   Q   And who did Mr. Freeman make that request
6   to?
7   A   He made that request to me directly.
8   Q   By telephone?
9   A   Yes. I never met with Mr. Freeman in
10  person during this whole process here.
11  Q   Okay. Did you speak to Mr. Freeman at all
12  about Mrs. Mahdavi's claim that she owned the
13  vehicle?
14  A   Yes. I contacted him, because Pentagon
15  Federal Credit Union contacted us. So I called him
16  and I said, "Dave, I have a credit union calling us
17  saying that they own the vehicle, and they have faxed
18  me over some information." And that's when Dave said
19  "No, there's an ongoing suit that we have with her
20  husband," and I didn't really get into it with him.
21      I said, "I'll fax you this paper." He
22  said, "Don't worry about it, you're fine on your end,

# EXHIBIT TWO

Capital Reporting Company
Mahdavi, Jodi C. 11-12-2014

1

```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF VIRGINIA
                 (Alexandria Division)
---------------------------------:
JODI C. MAHDAVI,                 :
                                 :
              Plaintiff,         :
                                 :
         vs.                     : Case No.
                                 : 1:14-cv-0648
NEXTGEAR CAPITAL, INC.           :
                                 :
and                              :
                                 :
P.A.R. SERVICES, INC.,           :
                                 :
              Defendants.        :
---------------------------------:
```

Arlington, Virginia

Wednesday, November 12, 2014

Deposition of:

JODI C. MAHDAVI

called for oral examination by counsel for Defendant, pursuant to notice, at the law offices of Levine, Daniels & Allnutt, 5311 Lee Highway, Arlington, Virginia, before Christy McGee, CSR, of Capital Reporting Company, a Notary Public in and for the Commonwealth of Virginia, beginning at 10:00 a.m., when were present on behalf of the respective parties:

Capital Reporting Company
Mahdavi, Jodi C. 11-12-2014

70
1  it, but I have no idea, like, how much it was.
2  Q  Have you ever seen his tax returns?
3  A  No, we don't file joint returns.
4  Q  How long have you been filing separately?
5  A  I don't think we've ever filed joint
6  returns.
7  Q  It's also true that the $12,466 that BW
8  Auto Outlet has has never been paid to PenFed,
9  right?
10     MR. LEVINE:  Objection, foundation, calls
11  for speculation.
12     THE WITNESS:  To my knowledge, it has not
13  been paid to PenFed.
14  BY MR. BRAGDON:
15  Q  You have produced as part of Exhibit
16  Number 3 your statements from PenFed, and if you'd
17  like to go through them again, that's fine, but
18  would you agree with me that none of those
19  statements reflect any payment of $12,466 to
20  PenFed?
21  A  They do not.
22  Q  Now, you did say that at one point your

71
1  Cartier watch was appraised for insurance purposes?
2  A  Uh-huh, yes.
3  Q  And that you do have a copy of something,
4  one of those insurance documents that has that
5  appraisal value on it?
6  A  The insurance value that it's insured
7  for.
8  Q  Okay.  Have you given that to your
9  counsel to be produced in this case as an indicator
10  of the Cartier watch's value?
11  A  Yes.
12     MR. MARKELS:  Has that been produced,
13  Counsel?
14     MR. LEVINE:  I don't know.  I'd have to
15  look and see what was produced.
16     MR. MARKELS:  James, do you recall that
17  being in here?
18     MR. BRAGDON:  We can address it, but I
19  haven't seen it.
20     MR. MARKELS:  Okay.
21     THE WITNESS:  There was never an
22  appraisal.  It was just an insurance, what it's

72
1  insured for.
2  BY MR. MARKELS:
3  Q  And that insurance was for a value,
4  correct?
5  A  Yes.
6  Q  And that value was pursuant to the
7  insurance company appraising the approximate value
8  of the Cartier watch?
9  A  Yes.
10  Q  Okay.  If you have not yet given that
11  document to your counsel, I ask that you do so,
12  that it be produced in this case.
13     Now, during the date of the repossession,
14  do you agree that that occurred in the early
15  morning hours of May 20th of 2014?
16  A  May 20th, yes.
17  Q  Okay.  Around, say, like 1:30 in the
18  morning or something like that?
19  A  Somewhere around in there, yes.
20  Q  You said that there were two gentlemen
21  who showed up?
22  A  Yes.

73
1  Q  Now, when did it become clear to you that
2  this was a repossession of your car as opposed to
3  just some people stealing it?
4  A  When they knocked on the door and asked
5  for the keys.
6  Q  Okay.  Did they have any indicia of who
7  they worked for on them, on their outfits?  Did
8  they give you a card, any other information?
9  A  No.
10  Q  All right.  Now, did you -- after they
11  left, did you chase them?
12  A  I have three kids, small kids inside.
13  No, I did not chase them.
14  Q  Do you know if your husband ever tried to
15  pursue them?
16  A  My husband was not at home.  I called him
17  on the phone.  I don't know.
18  Q  Where was he at the time?
19  A  I don't know.  He wasn't home.
20  Q  He wasn't at work?
21  A  It was 1:30 in the morning.  I don't
22  know.

Capital Reporting Company
Mahdavi, Jodi C. 11-12-2014

Page 74

```
1    Q   Okay. He hadn't told you where he was?
2        MR. LEVINE: Objection, asked and
3    answered.
4        THE WITNESS: No.
5    BY MR. MARKELS:
6    Q   All right. Now, to your knowledge,
7    nobody in any vehicle or on foot pursued the men
8    who repoed your car?
9    A   No, my husband met up with the police and
10   the men, the people who had the car.
11   Q   Now, you said as this was going on you
12   called the police, correct?
13   A   No, I told the men standing there to
14   leave, that I was going to call the police, and
15   that's when they left.
16   Q   Did you ever -- did you call the police
17   at that time?
18   A   No, I hung up the phone. They left --
19   they were leaving. I called my husband and said
20   that they left. That's when he got on the phone
21   with the police and they tracked them down.
22   Q   To your knowledge, have the police taken
```

Page 75

```
1    any action against P.A.R. Services or NextGear or
2    anybody else with regard to that car?
3    A   Not to my knowledge.
4    Q   Do you know whether your husband was a
5    salaried employee of BW Outlet or was on
6    commission? Do you have any idea?
7    A   I don't know.
8    Q   Was he responsible for paying any of the
9    household obligations?
10   A   He pays the mortgage.
11   Q   That's the only thing he's in charge of?
12   A   Yes.
13   Q   Now, let's look at Exhibit Number 1, your
14   answer to Interrogatory No. 7, which is on Page 5.
15   Do you see that this is Interrogatory No. 7 about,
16   "Set forth all facts in support of the allegations
17   of Paragraph 31 of your complaint." Looking at
18   Exhibit Number 1.
19       MR. LEVINE: Exhibit Number 1. You mean
20   Exhibit 2?
21       MR. MARKELS: I'm looking for Jodi
22   Mahdavi's Supplemental Responses to P.A.R Services.
```

Page 76

```
1        MR. BRAGDON: The P.A.R. one.
2        THE WITNESS: It's this one.
3        MR. LEVINE: Exhibit 2 is how we have it.
4        MR. MARKELS: Oh, you're on another
5    exhibit. I thought it was switched around. That's
6    fine.
7        THE WITNESS: Which page are we on?
8        MR. LEVINE: Page 5.
9    BY MR. MARKELS:
10   Q   Page 5. Page 5 of Exhibit 2. Now,
11   although the copies that we have before us are not
12   signed by you, you agree that you did sign these
13   particular answers to these supplemental
14   interrogatory answers, right?
15   A   Yes.
16   Q   Now, in your supplemental answer you
17   state that you received title for the BMW. Do you
18   see that?
19   A   Yes.
20   Q   Now, when you say you received title for
21   the BMW, you mean that what was in Exhibit 3 as
22   Mahdavi 1 was received to you in the mail, correct?
```

Page 77

```
1    A   Yes.
2    Q   And we already talked about you did not
3    file any application or receive prior title to the
4    BMW at any time, correct?
5    A   Yes.
6    Q   All right. If you would turn to Page 6
7    of that same -- of Exhibit 2, you see where under
8    the supplemental answer it says, "Subject to and
9    without waiving the prior objections, on or about
10   May 21, 2014, I spoke to Deb McCloud on the
11   telephone about the BMW being repossessed and she
12   transferred my call to Kerry Howard." Do you see
13   that?
14   A   Yes.
15   Q   Are you sure that was on the 21st and not
16   on the 20th?
17   A   Yes. The 20th was the day the car was
18   taken.
19   Q   Right, the very early morning of the
20   20th, right.
21   A   Yes.
22   Q   So you did not contact PenFed the entire
```

(866) 448 - DEPO
www.CapitalReportingCompany.com © 2014