

Transcript of **APRIL MARIE RECTOR**

**Date:** November 17, 2014

**Case:** MAHDAVI v. NEXTGEAR CAPITAL, INC., ET AL

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: www.planetdepos.com

Court Reporting | Videography | Videoconferencing | Interpretation | Transcription

DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

1 (Pages 1 to 4)

**Page 1**

1      IN THE UNITED STATES DISTRICT COURT
2      FOR THE EASTERN DISTRICT OF VIRGINIA
3        Alexandria Division
4  - - - - - - - - - - - - - - - -x
5  JODI C. MAHDAVI,      :
6      Plaintiff,   :
7      v.      : Case No.:
8  NEXTGEAR CAPITAL, INC., et  : 1:14-cv-00648-TSE-TCB
9  al.,      :
10     Defendants.   :
11  - - - - - - - - - - - - - - - -x
12
13      Deposition of PAR SERVICES, INC.,
14    By and through its Corporate Designee,
15      APRIL MARIE RECTOR
16        Washington, DC
17     Monday, November 17, 2014
18        2:32 p.m.
19
20  Job No.: 70226
21  Pages: 1 - 55
22  Reported By: Lee Bursten, RMR, CRR

**Page 2**

1      Deposition of PAR SERVICES, INC., By and
2  through its Corporate Designee, APRIL MARIE RECTOR,
3  held at the offices of:
4
5
6      JACKSON & CAMPBELL PC
7      1120 Twentieth Street, NW
8      South Tower
9      Washington, DC 20036
10     (202) 457-1600
11
12
13
14
15      Pursuant to agreement, before Lee Bursten,
16  Registered Merit Reporter, Certified Realtime
17  Reporter, and Notary Public in and for the District
18  of Columbia, who officiated in administering the oath
19  to the witness.
20
21
22

**Page 3**

1        A P P E A R A N C E S
2  ON BEHALF OF PLAINTIFF:
3     JONATHAN EDWARD LEVINE, ESQUIRE
4     LEVINE DANIELS & ALLNUTT PLLC
5     5311 Lee Highway
6     Arlington, Virginia 22207
7     (703) 525-2668
8
9  ON BEHALF OF DEFENDANT PAR SERVICES INC.:
10    JAMES N. MARKELS, ESQUIRE
11    JACKSON & CAMPBELL PC
12    1120 Twentieth Street, NW, South Tower
13    Washington, DC 20036
14    (202) 457-1600
15
16  ON BEHALF OF DEFENDANT NEXTGEAR CAPITAL INC.:
17    JAMES D. BRAGDON, ESQUIRE
18    GALLAGHER EVELIUS & JONES LLP
19    218 North Charles Street, Suite 400
20    Baltimore, Maryland 21201
21    (410) 727-7702
22

**Page 4**

1        C O N T E N T S
2  EXAMINATION OF APRIL MARIE RECTOR    PAGE
3  By Mr. Levine        5
4
5
6        E X H I B I T S
7  (Attached to transcript. Exhibit 2 was not introduced.)
8  PAR DEPOSITION EXHIBITS     PAGE
9  Exhibit 1   Notice of Deposition    6
10  Exhibit 3   Defendant PAR Services Inc.'s   18
11      Answers to Plaintiff's First Set
12      of Interrogatories
13  Exhibit 4   Defendant PAR Services Inc.'s   19
14      Responses to Plaintiff's First
15      Request for Production of
16      Documents
17  Exhibit 5   PAR document production    20
18  Exhibit 6   Maryland Notice of Security   39
19      Interest Filing
20  Exhibit 7   Mahdavi letter to PAR, 5/23/14   43
21
22

DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

2 (Pages 5 to 8)

---

**Page 5**

1    P R O C E E D I N G S
2    APRIL MARIE RECTOR
3    having been duly sworn/affirmed, testified as
4    follows:
5    EXAMINATION BY COUNSEL FOR PLAINTIFF
6    BY MR. LEVINE:
7    Q    Would you please state your name.
8    A    Sure, it's April Marie Rector.
9    Q    And who is your employer?
10   A    PAR Services.
11   Q    And where is PAR Services located?
12   A    We're in Clinton, Maryland.
13   Q    And do you work in Clinton, Maryland?
14   A    I do.
15   Q    And what's the address in Clinton?
16   A    6504 Yochelson Place.  And the zip code is
17   20735.
18   Q    And what's your job title?
19   A    Manager.
20   Q    And what are your day-to-day
21   responsibilities?
22   A    Day-to-day, just kind of watch over

---

**Page 6**

1    everything, any problems that come in I take care of,
2    handle the insurance.  Just managing the office
3    employees, things of that nature.
4    Q    What kind of business is PAR Services?
5    A    It's a repossession company.
6    Q    Does it do general towing or just
7    repossessions?
8    A    Just repossessions.
9    Q    And how long have you been at PAR Services?
10   A    I've been there 15 years.
11   Q    And how long have you been a manager there?
12   A    About ten years.
13   Q    So you were a manager in May of 2014?
14   A    Yes.
15   Q    And are you familiar with the facts and
16   circumstances of this case?
17   A    Yes.
18   Q    Okay.  And I would like for you to take a
19   look at what's been marked as PAR 1.
20        (PAR Exhibit 1 was marked for
21   identification and attached to the deposition
22   transcript.)

---

**Page 7**

1    MR. MARKELS:  Is there a question pending?
2    I'm sorry.
3        MR. LEVINE:  I just asked her if she could
4    review it.
5    A    Sure.
6        Okay.  Yes.
7    BY MR. LEVINE:
8    Q    Have you seen this document before?
9    A    I don't recall seeing this one before.
10   Q    Do you understand you're here as the
11   corporate representative for PAR Services?
12   A    Yes.
13   Q    And to give testimony on the subject
14   matters that are identified in this notice of
15   deposition?
16   A    Yes.  I've gotten so many documents on it,
17   so everything kind of looks the same; but I
18   understand why I'm here.
19   Q    Sure.  Now, the notice of deposition
20   identifies several subject matters that you're called
21   on to give testimony to.  And are you here to give
22   testimony on each of these items?

---

**Page 8**

1    A    In this deposition here?
2        MR. MARKELS:  To the extent that PAR knows
3    them.
4    A    Yes, so whatever questions I can answer.
5        MR. LEVINE:  I'll just ask you, don't
6    instruct your witness.  You can give an objection.
7        MR. MARKELS:  I'm just saying, she can only
8    testify as PAR's representative as to what PAR knows
9    personally.
10       MR. LEVINE:  I understand.  That's a
11   direction telling your witness how to testify.  You
12   can object, that's fine.  I would appreciate it if
13   you would not give instructions like that.
14   BY MR. LEVINE:
15   Q    Are there any of the designations that you
16   are unable to testify to?
17       MR. MARKELS:  I'm going to object as to
18   form.  Go ahead and answer.
19   A    Can you repeat that question one more time?
20   I'm sorry.
21   BY MR. LEVINE:
22   Q    Sure.  Of the subject matters that are

---

DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

9

1  identified in the notice, are there any of them that
2  you are unable to provide testimony to?
3      **A    Yes.**
4      Q    Okay. Which one?
5      **A    Okay. So there's -- there's a few. Okay.**
6  **So the chain of title of the BMW, I don't understand**
7  **that.**
8      Q    Is that because you don't have any
9  information on that?
10     **A    Right. I just have information on what was**
11 **supplied to us by NextGear.**
12     Q    Okay. But there's nobody else at PAR
13 Services who would have information on the chain of
14 title?
15     **A    No.**
16     Q    So you are able to testify that PAR
17 Services has no information on the chain of title?
18     **A    Correct.**
19     Q    Okay. That's fine. So to me that would
20 be, you can testify on that, just you would testify
21 what information PAR Services has on that subject
22 matter.

10

1      **A    Correct.**
2      Q    Can we be in agreement on that?
3      **A    Yes.**
4      Q    Okay.
5      **A    I mean, some of these questions I don't**
6  **really understand. You may have to, you know, break**
7  **them down for me a little bit. There may be some**
8  **things that I don't understand. Do you want me to**
9  **look through each individual one and tell you which**
10 **ones I don't understand?**
11     Q    You can do that, sure.
12     **A    Okay. Or are we going to go through these**
13 **one by one?**
14     Q    Probably not one by one.
15     **A    Okay.**
16     Q    Not individually.
17     **A    Okay. Because there's some information on**
18 **here that -- or some of the questions that I think I**
19 **would have to refer to NextGear.**
20     Q    Okay. Which ones?
21     **A    Well, like the chain of title, for example,**
22 **that would be one. NextGear's interest in the**

11

1  subject BMW.
2      Q    So PAR Services has no information on
3  NextGear's interest in the --
4      **A    Well, no, I'm sorry. No.**
5      **I can't answer question number 25, PAR**
6  **Services's allegation that plaintiff does not have**
7  **good title to the subject BMW. That would be a**
8  **question that I would have to direct towards**
9  **NextGear. I just know the information that was**
10 **provided to me. So I don't know -- that's a question**
11 **that I don't think I would be able to answer.**
12     Q    Okay. Is there anyone at PAR Services who
13 would have any information on whether or not
14 Mrs. Mahdavi had good title to the BMW?
15     **A    No. I think that may be -- okay. I think**
16 **that may be -- I mean, I should be able to provide**
17 **you with answers to the best of my knowledge on the**
18 **rest of the information that's here.**
19     Q    Okay. Thank you. Have you ever given a
20 deposition before?
21     **A    I have.**
22     Q    And so you understand that if you don't

12

1  understand a question, please let me know.
2      **A    Yes.**
3      Q    Okay. And if you don't say anything, I'm
4  going to assume that you understand my question. Is
5  that fair?
6      **A    That's fair.**
7      Q    How many times have you been deposed?
8      **A    One.**
9      Q    And when was this?
10     **A    That was approximately a year ago.**
11     Q    And where was this?
12     **A    Which state?**
13     Q    Yes.
14     **A    It was in Maryland.**
15     Q    And do you recall what the case was about?
16     **A    It was a driver that we had working for us**
17 **at the time, was involved in an accident, and then I**
18 **just had to give testimony as to what his pay was,**
19 **his yearly pay, year to date, things like that, if he**
20 **was full-time, part-time employee.**
21     Q    Okay. And was this in a lawsuit?
22     **A    It was.**

13

1    Q    And was PAR Services a defendant?
2    A    No. The driver that worked for us was
3  suing the person that had hit him, was basically
4  suing that company, and that insurance company.
5    Q    It didn't involve a repossession?
6    A    No. No. It had nothing to do with a
7  repossession. He was driving a rollback and got
8  rear-ended.
9    Q    Have there been any other lawsuits against
10  PAR Services or relating to an allegation that PAR
11  Services improperly repossessed a vehicle?
12        MR. MARKELS: Objection, relevance. Go
13  ahead.
14    A    Not that I can recall, like recently in the
15  past year. No. Not that I can recall at the moment.
16  BY MR. LEVINE:
17    Q    Other than your attorney, have you
18  discussed the facts of this case with anybody?
19    A    Not after the repossession took place.
20  Like as far as any -- as far as giving information
21  for attorneys and such, no.
22    Q    So in preparing for your deposition, you

14

1  only spoke with your attorney?
2    A    Correct.
3    Q    Did you review any documents in preparation
4  for the deposition?
5    A    Just the documents that had been mailed to
6  me I believe by your office, just the things -- you
7  guys sent like a big stack of -- I was always getting
8  something in the mail. So just that was pretty much
9  it. I mean, other than that, no. There's not a
10  whole lot to review.
11    Q    Okay. Did anyone from NextGear provide any
12  documents to you?
13    A    No, not that I recall. No.
14    Q    So what's your basis for the knowledge of
15  the facts and circumstances of this case?
16    A    As far as how are we involved, or like...
17    Q    How are you personally aware of PAR
18  Services's involvement?
19    A    With the repossession or with the current
20  lawsuit that's going on?
21    Q    Let's start with the current lawsuit.
22    A    Okay. Just notification through mail. I

15

1  mean, originally we were notified by Ms. Mahdavi's
2  attorney's office, which I don't believe it was you,
3  it was a female I had spoken to once or twice before
4  from your office. And that -- you know, and then we
5  did the repossession, and then there was obviously
6  some issues.
7        And that's how we got involved, after the
8  repossession.
9    Q    Other than yourself, is there anyone else
10  at PAR Services who would have firsthand knowledge of
11  the repossession?
12    A    The agent that repossessed the vehicle.
13    Q    Who is that?
14    A    Terrence Kelley.
15    Q    Is that K-E-L-L-Y?
16    A    K-E-L-L-E-Y.
17    Q    Is he a PAR Services employee?
18    A    He is.
19    Q    And he was employed by PAR Services on the
20  date the BMW was repossessed?
21    A    He was, yes.
22    Q    And he was acting within the scope of his

16

1  employment?
2    A    He was.
3    Q    Have you discussed the repossession of the
4  vehicle with Mr. Kelley?
5    A    Just what occurred the night of the
6  repossession.
7    Q    When did you discuss that with him?
8    A    When it happened.
9    Q    And subsequent to that, did you have any
10  discussions with Mr. Kelley about the repossession?
11    A    No. Just after it happened, just getting,
12  you know, the information from him as far as what
13  occurred, you know, after that. I mean, it was just
14  what happened the night of the repossession.
15    Q    And what did he tell you had happened the
16  night of the repossession?
17    A    He went out to the location that was
18  provided to us by NextGear Capital. He attempted to
19  repossess the BMW, knocked on the door to try and
20  obtain the keys, and I believe it was Ms. Mahdavi
21  that had come to the door. She contacted her
22  husband, who advised her not to turn the car over.

Case 1:14-cv-00648-TCB   Document 58-15   Filed 12/16/14   Page 6 of 25 PageID# 631
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

5 (Pages 17 to 20)

**17**

1    And so once he -- you know, once
2 Ms. Mahdavi and her husband I guess spoke or whatnot,
3 that she was not giving the keys up.  So he left.  He
4 hooked up to the car, which actually the car was
5 already hooked up.  He knocked on the door after he
6 hooked it up to get the keys, and he left.
7    At which time, when he left, he left, he
8 stopped at a 7-Eleven not far from her house, went
9 inside, got some things, and then he was leaving the
10 parking lot of the 7-Eleven and he was approached by
11 a male driving another vehicle who tried to block him
12 in.  He assumed it was Ms. Mahdavi's husband, because
13 he knew she had been on the phone with her -- with
14 him.  So he left.  The guy tried to run him off the
15 road a couple of times.
16    He found there was some roadwork going on.
17 He pulled over to where the cops were.  He got out,
18 advised them what was happening.  The gentleman who
19 actually tried to run him off the road, which I
20 believe was Ms. Mahdavi's husband, he got out as
21 well.  They all had to give their IDs or
22 identification to the police officers who were there.

**18**

1    And so the police officers made the
2 determination that we were within the law to take the
3 vehicle and allowed the driver to proceed.
4    Q    Do you know the name of that officer?
5    A    It's on the -- there was a copy, and I
6 believe everybody should have a copy of it.  It has
7 my business card and also has a case number and I
8 believe also has the officer's number on there, or
9 name and badge number.
10    Q    And you know all this from what Mr. Kelley
11 told you?
12    A    Correct.
13    Q    Did you ever speak to the police officer?
14    A    I did not.
15    Q    Did you speak to Mr. Mahdavi?
16    A    I did not.
17    Q    Have you ever spoken to Mrs. Mahdavi?
18    A    I have not.
19    (PAR Exhibit 3 was marked for
20 identification and attached to the deposition
21 transcript.)
22 BY MR. LEVINE:

**19**

1    Q    Take a moment to review this document.
2    A    Okay.
3    Q    And the answer to question number 1 states
4 that you were the person who answered, assisted, or
5 provided the information for the interrogatories with
6 the assistance of counsel?
7    A    Correct.
8    Q    And that nobody else other than counsel
9 assisted?
10    A    Correct.
11    Q    And are all the answers true and accurate
12 to the best of your knowledge?
13    A    Yes.  Yes.  No, everything's correct.  I
14 was just -- yes.  Everything is accurate.
15    (PAR Exhibit 4 was marked for
16 identification and attached to the deposition
17 transcript.)
18 BY MR. LEVINE:
19    Q    Take a moment and review this document.
20    A    Okay.
21    Q    It's been marked as PAR 4.
22    A    Okay.

**20**

1    Q    Are you familiar with this document?
2    A    I mean, there was so much -- I mean, yeah.
3 Yes.  It all seems the same to me.
4    Q    To the best of your knowledge, is
5 everything true and accurate?
6    A    Yes.  Oh, okay.  Yes, this is -- these are
7 the emails here.  Let me just take a look at this.
8    Q    I've got a stack of documents marked as PAR
9 5.
10    (PAR Exhibit 5 was marked for
11 identification and attached to the deposition
12 transcript.)
13    A    Okay.
14 BY MR. LEVINE:
15    Q    Are you familiar with those documents?
16    A    Yes.
17    Q    Those documents were produced by PAR in
18 response to the request for production of documents?
19    A    Yes.
20    Q    Does PAR have anything to add in response
21 to the request for production of documents?
22    MR. MARKELS:  I'll just note, counsel, I

---

21

1    sent you an email Friday with three additional
2    documents that were attached to it, 77 to 79.
3          MR. LEVINE: Oh, okay.
4          MR. MARKELS: I mean, I did.
5          MR. LEVINE: Okay.
6          MR. MARKELS: But barring that, go ahead
7    and answer.
8    BY MR. LEVINE:
9       Q    Okay. With what counsel has said, and if
10   he says he sent it, I will go and look.
11         MR. LEVINE: Do you recall what they were?
12         MR. MARKELS: There was one that was -- if
13   you want to, I can go get you copies. One was sort
14   of a report, inspection report of the BMW that has a
15   stamp on it from Manheim showing it had been
16   received. Another one was a -- it had like the
17   police officer's ID as well as Ms. Rector's ID, as
18   well as some notes about the police officer case.
19         And then the last one was a fax cover page
20   from PenFed to PAR Services. Does that sound
21   familiar?
22         MR. LEVINE: Is that it?

---

22

1          MR. MARKELS: What does it say at the
2    bottom?
3          MR. LEVINE: "Per Pentagon this is her
4    employer info."
5          MR. MARKELS: We had it marked PAR
6    Services.
7          MR. LEVINE: This looks like 75. Here's
8    76. So what were the pages?
9          MR. MARKELS: 77 through 79.
10         MR. LEVINE: 77 through 79. I don't think
11   I have those. Can we take a quick two-minute break,
12   you can run and get them.
13         (Recess.)
14         MR. LEVINE: So we are adding to what's
15   been marked as PAR 5, we are adding to that Bates
16   stamped documents PAR Services 000077, 78, and 79.
17         MR. MARKELS: Yes.
18   BY MR. LEVINE:
19      Q    So now this is everything that's been
20   produced by PAR Services in this matter?
21      A    Yes.
22      Q    And to your knowledge, there's no

---

23

1    additional responsive documents?
2       A    No, not to my knowledge. It was very
3    limited.
4       Q    Now, what's the relationship between PAR
5    Services and NextGear?
6       A    NextGear is a client of ours. A business
7    relationship. We repossess vehicles for them.
8       Q    How long has there been a business
9    relationship between them?
10      A    For several years. At least four, five.
11      Q    Is there a written contract between PAR
12   Services and NextGear?
13      A    Yes. When we initially started doing
14   business for them, there was a contract with a fee
15   schedule that was signed with NextGear. But I have
16   not located that contract yet, the original from day
17   one. And it may be something that I can pull and
18   submit. I just haven't been able to go through all
19   my records yet.
20      Q    Okay. And are you usually the point of
21   contact for PAR Services, between PAR Services and
22   NextGear?

---

24

1       A    I have been recently. Over the years,
2    though, it's changed. There's been different people
3    that, you know, have worked with NextGear.
4       Q    Yes. So how about in April/May of 2014?
5       A    I had direct contact with NextGear at that
6    time.
7       Q    How about Denny Par [sic]?
8       A    Yes. He was originally sent the
9    information in reference to the vehicle driven by
10   Ms. Mahdavi.
11      Q    The BMW?
12      A    Correct.
13      Q    And --
14      A    And the other vehicles that were listed on
15   the -- there was a repossession log sheet that had
16   numerous vehicles listed on it.
17      Q    That log was sent to Denny Par [sic]?
18      A    Correct. It was emailed to him.
19      Q    Okay. And do you know who emailed it to
20   him?
21      A    That would have been Dave Freeman. But
22   there were other -- it kind of was like an email

---

25

1  where several people were listed on it.  But it was
2  emailed to Denny from Dave Freeman.
3     Q    Okay.  And do you know if that email has
4  been produced?
5     A    That email is in PAR 5.  So the
6  initial email starts on page 69 and it goes to page
7  74.
8     Q    Okay.  And Dennis Rector, Denny Rector?
9     A    Yes.
10    Q    Now, during Mr. Freeman's deposition, he
11 called him Denny Par.  Is that incorrect?
12    A    Yes.
13    Q    It's Denny Rector?
14    A    Denny Rector, yes.
15    Q    And what's your relationship to Denny
16 Rector?
17    A    He's my brother.
18    Q    So is PAR Services a family business?
19    A    Yes.
20    Q    Now, what did PAR Services do in
21 determining the location of the BMW?
22    A    We did not determine the location.  Dave

---

26

1  Freeman contacted Denny and said he had spotted the
2  vehicle at the residence's address.  He gave us the
3  address and asked us to go there and repossess the
4  BMW.
5     Q    And other than providing a list of vehicles
6  in the email attachment -- is that PAR Services
7  000073?
8     A    Oh, I'm sorry.  What was the question?
9     Q    On 73, is that the list of vehicles that
10 Mr. Freeman provided?
11    A    Yes, that would be the list of vehicles.
12 73 and page 74.
13    Q    Okay.  And did Mr. Freeman provide any
14 title work for any of the vehicles?
15    A    No.  He did not.  And generally they do
16 not, because we repossess such a large number of
17 vehicles for them, they send us the list over because
18 they finance dealerships, and Dave typically goes out
19 to the dealership and will call us and tell us, okay,
20 I've spotted five out of ten cars, they're here at
21 this dealership, come pick them up.
22        And most of the time, he meets my driver

---

27

1  out there and, you know, pinpoints the vehicles that
2  need to be picked up, and then gives the drivers the
3  paperwork there.  They'll have a list.  And then
4  he'll give them some more paperwork.
5     Q    What kind of paperwork does he usually
6  give?
7     A    A list similar to this.  Or -- you know, a
8  list like this.  I would have to pull other files
9  that we've done for him to, you know, let you know
10 for sure exactly what the paperwork is, because I
11 don't know off the top of my head.
12    Q    Okay.  But in this instance, he did not --
13 Mr. Freeman did not meet your driver when the vehicle
14 was repossessed?
15    A    No.
16        MR. MARKELS:  Wait until he asks the
17 question.  We had this problem in the last
18 deposition.  It's common.  Wait until he asks his
19 question.
20        THE WITNESS:  Okay.
21        MR. MARKELS:  Go ahead.
22 BY MR. LEVINE:

---

28

1     Q    Mr. Freeman did not meet your driver when
2  the BMW was repossessed?
3     A    He did not.
4     Q    The BMW was on Mrs. Mahdavi's property when
5  it was repossessed?
6     A    It was at the address that Dave provided
7  for us.  I'm assuming that's Ms. Mahdavi's property.
8     Q    But it was in her driveway?
9     A    It was in the driveway of the address -- I
10 believe this is the address here, 915 Fairway Drive.
11 Yes, the vehicle was sitting in the driveway at the
12 address provided.
13    Q    Did Mr. Kelley tell you that?
14    A    He verified the vehicle was there, yes.
15 He -- because they can't take a vehicle unless they
16 check the VIN number to make sure it matches up with
17 the paperwork.
18    Q    Okay.  So he entered onto Mrs. Mahdavi's
19 property?
20    A    He did.
21    Q    And checked the VIN while on her property?
22    A    He did.

DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

29

1    Q    Did he have permission to be on her
2  property?
3    A    He -- whenever we do a repossession, we can
4  go onto the address and pick up the car, as long as
5  we don't breach the peace, and leave.
6    Q    What time of day was this that the car was
7  repossessed?
8    A    I don't know the exact time, but in the
9  early morning hours.
10    Q    It was about 1:30 in the morning?
11    A    Possibly.
12    Q    And he rang the doorbell at 1:30 in the
13  morning?
14    A    He knocked on the door.
15    Q    Did he ascertain whether anyone was home at
16  the time?
17    A    No.
18    Q    Do you know, did he ascertain whether
19  people were sleeping at 1:30 in the morning?
20    A    No.
21    Q    Okay.  What did he tell you happened when
22  he rang the doorbell?

30

1    A    He told me he hooked up to the vehicle and
2  knocked on the door to see if he could get the keys,
3  that there was a light on, and he went to the door,
4  knocked on the door, rang the doorbell, whatever it
5  was, and Ms. Mahdavi came to the door.
6    Q    So he noticed a light on before he knocked
7  on the door?
8    A    He said there was a light on, and then he
9  knocked on the door, if I can recall from -- I don't
10  know exactly, you know, what order he did that in.
11    Q    Okay.  Do you know which light was on?
12    A    He said there was a light on, so I don't
13  know.  I'm not going to say, because I'm not going to
14  assume.
15    Q    Okay.  Did he say how long it took
16  Mrs. Mahdavi to come to the door after he knocked on
17  it?
18    A    He did not.
19    Q    Are you aware of how long it took?
20    A    I am not.
21    Q    Do you know whether she was awake or sleep
22  at the time he knocked?

31

1    A    I don't know.
2    Q    Other than checking the VIN number of the
3  vehicle, did PAR Services do anything to ascertain
4  who had title to the BMW?
5    A    No.
6    Q    Is that typical, when you're repossessing a
7  vehicle, that you don't check to see who has title to
8  the vehicle?
9        MR. MARKELS:  Objection, relevance.  Go
10  ahead.
11        THE WITNESS:  Am I supposed to answer that?
12        MR. MARKELS:  Yes.
13        THE WITNESS:  Okay.
14    A    The way it works, our client sends over a
15  repossession order.  We go out to pick the vehicle
16  up.  It's up to our client to produce that
17  information.  They don't generally send us a title to
18  a vehicle, no.
19  BY MR. LEVINE:
20    Q    Okay.  When you say it's up to the client
21  to send that information, do you mean information on
22  the title?

32

1    A    For example, you're asking me if we had a
2  title to the vehicle.  No, we did not.  We didn't
3  need a title to repossess it.  We rely on the client
4  to have that information on their end.
5    Q    So you just assume your client has good
6  title?
7    A    Correct.
8    Q    Where did Mr. Kelley take the BMW after he
9  left the scene with the police officer?
10    A    He took it back to our storage facility in
11  Clinton, Maryland.
12    Q    Okay.  And so about what time did he arrive
13  in Clinton?
14    A    I don't know.
15    Q    And do you know what he did with the
16  vehicle when he got to the storage facility?
17    A    It was put into our storage lot and
18  secured.
19    Q    Is that indoors, outdoors?
20    A    Outdoors, with a -- you know, we have a
21  locked gate.  We have an individual who manages the
22  lot who checks the individuals in.

Case 1:14-cv-00648-TCB  Document 58-15  Filed 12/16/14  Page 10 of 25 PageID# 635
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

9 (Pages 33 to 36)

33

1    Q    And who is that?

2    A    His name is Joseph Atchison.

3    Q    Did PAR Services perform any kind of

4  inventory of the contents of the vehicle?

5    A    When the vehicle initially came in, it was

6  locked, and it remained locked for several days,

7  until we received something in the mail stating -- it

8  was like a certified letter I think Ms. Mahdavi had

9  sent in stating that she had some money and jewelry

10  in the vehicle.  And so it was at that time that we

11  had the vehicle -- because it's a very hard

12  vehicle -- when it's locked up, it's very hard to

13  gain access to.

14        So once we received the certified letter,

15  and I don't remember which one of our guys, a guy who

16  worked for us, I don't remember which one it was,

17  opened it up.  I was out there when they opened it

18  up.  And the only thing that was in that vehicle was

19  some paperwork and a pair of boxing gloves.

20        Now, we could not -- did not gain access to

21  the trunk.

22    Q    So you were present when the car was

34

1  opened?

2    A    I was.

3    Q    And how was it opened?

4    A    It's called a break-in kit.  It's a wire,

5  and they have to -- there's a wedge that they use to

6  kind of get the vehicle -- they have to create like a

7  pocket so they can get a tool in that unlocks the

8  vehicle.

9    Q    And I'm sorry, did you say you don't

10  remember who --

11    A    I don't remember, no.  I don't.

12    Q    Okay.  Do you have multiple employees who

13  would use the kit?

14    A    Yes, we do.

15    Q    And what was done with the contents of the

16  vehicle?

17    A    The contents of the vehicle?  They remained

18  in the vehicle.  We didn't take the contents out.

19  They remained in the vehicle and the vehicle was sent

20  to Manheim Auction.  We notified NextGear what was in

21  there and left it in there.  We did not remove

22  anything.

35

1    Q    Who wrote down the inventory?

2    A    I did.

3    Q    Do you recall whether there was a child

4  seat in the car?

5    A    There was not.

6    Q    How long was the BMW on PAR Services's

7  property?

8    A    I'm going to revert back to the documents

9  here.  Let's see.  We repossessed it on I believe --

10  this is a fax copy.  It looks like May 20th.  Yes.

11  May 20th is the date it was repossessed and it was

12  delivered to the auction on May 30th.  So 5/20, 2014,

13  until 5/30, 2014, is when it remained in PAR's

14  possession.

15    Q    Do you know why PAR Services had it for ten

16  days?

17    A    We generally -- whenever we repossess a

18  vehicle, it generally sits on our lot until our

19  client requests that we deliver it.

20    Q    So who made the request that it be

21  delivered?

22    A    Dave Freeman requested the delivery.

36

1    Q    And his request was to take it to BW --

2  Baltimore-Washington Manheim?

3    A    Correct.  BW Manheim, I get it confused

4  too.

5    Q    And who did Mr. Freeman make that request

6  to?

7    A    He made that request to me directly.

8    Q    By telephone?

9    A    Yes.  I never met with Mr. Freeman in

10  person during this whole process here.

11    Q    Okay.  Did you speak to Mr. Freeman at all

12  about Mrs. Mahdavi's claim that she owned the

13  vehicle?

14    A    Yes.  I contacted him, because Pentagon

15  Federal Credit Union contacted us.  So I called him

16  and I said, "Dave, I have a credit union calling us

17  saying that they own the vehicle, and they have faxed

18  me over some information."  And that's when Dave said

19  "No, there's an ongoing suit that we have with her

20  husband," and I didn't really get into it with him.

21        I said, "I'll fax you this paper."  He

22  said, "Don't worry about it, you're fine on your end,

Case 1:14-cv-00648-TCB  Document 58-15  Filed 12/16/14  Page 11 of 25 PageID# 636
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

10 (Pages 37 to 40)

37

1  the vehicle belongs to us, there's just some other
2  issues going on with the dealership that we
3  financed."
4      Q    Other than Dave Freeman, did you ever speak
5  to anyone else at NextGear about Mrs. Mahdavi's claim
6  that she owns the vehicle?
7      A    I spoke to Mr. Bragdon like once or twice,
8  but just to kind of send him the information and find
9  out what was going on with it.  You know, just -- it
10  was briefly.  It wasn't -- you know, I was just
11  trying to find out what was going on, because we were
12  receiving -- this was prior to us retaining counsel.
13        We were receiving stuff from your office,
14  and then stuff from the courts; so I was just trying
15  to find out what was going on.
16      Q    So other than Mr. Bragdon, but no employee
17  of NextGear other than Dave Freeman?
18      A    Not that -- no, not that I can recall.
19      Q    Not Lisa Long?
20      A    No.  I don't -- I don't recall ever
21  speaking to her.
22      Q    All right.  After PAR Services delivered

38

1  the vehicle to Baltimore-Washington Manheim, has PAR
2  Services ever had any involvement with the BMW
3  outside of the litigation?
4      A    No.
5      Q    Now, does PAR Services have insurance to
6  cover a loss in the event it repossesses a car that
7  it's not authorized to do?
8      A    Yes.
9      Q    And did you make an insurance claim?
10      A    I made the insurance claim.  I contacted
11  our insurance company, because we were named in this
12  lawsuit.  I originally contacted Mr. Bragdon and
13  NextGear to find out what was going on.  And when I
14  wasn't getting anywhere there, and I kept receiving
15  stuff in the mail, that's when I contacted our
16  insurance company and advised them that we were being
17  named in a lawsuit.
18        And I sent them, you know, what information
19  I had.  And then that's when they retained counsel on
20  our behalf.
21      Q    If you can look at what's been marked as
22  PAR 6.

39

1      (PAR Exhibit 6 was marked for
2  identification and attached to the deposition
3  transcript.)
4  BY MR. LEVINE:
5      Q    That's part of responses to request for
6  production of documents.  Do you recognize this
7  document?
8      A    I do.
9      Q    And did you receive this document from
10  Pentagon Federal Credit Union?
11      A    I did.
12      Q    And do you recall when you received it?
13      A    I received it the day of the repossession.
14      Q    And did you provide this document to
15  NextGear?
16      A    I don't know if I sent this -- wait.  Yes,
17  I did.  I did.  I faxed this to Dave Freeman, along
18  with there was a fax cover sheet that Pentagon
19  Federal Credit Union sent to me along with this, and
20  I faxed that to Dave the same day.
21      Q    But the vehicle had already been
22  repossessed?

40

1      A    Correct.  Yes.  This all came about after
2  the day it was repossessed.
3      Q    And do you know who at Pentagon Federal
4  Credit Union sent this to you?
5      A    Can I look back here?  It's on the fax
6  cover sheet.  It was sent from George Davis.
7      Q    Okay.
8      A    That's whose name was on the fax cover
9  sheet.
10      Q    All right.  And whose notes are those at
11  the bottom of the -- if you look at PAR 6, at the
12  bottom.
13      A    Those are my notes.  They were given to me
14  by Pentagon Federal Credit Union.
15      Q    And the vehicle was still on your lot when
16  this was given to you?
17      A    Correct.
18      Q    Did NextGear ever show you the title that
19  they possessed to the BMW?
20      A    No, I never received a copy of that.
21      Q    So is this the only title that you ever saw
22  to the BMW?

---

**41**

1     A  It is.

2     MR. MARKELS: Objection. Not reflected

3 there, and irrelevant. Go ahead and answer to the

4 extent you can.

5     A  I believe this is, yes, the only copy that

6 I saw.

7 BY MR. LEVINE:

8     Q  Okay. Other than this document, did you

9 see any other documents that would have indicated

10 ownership of the BMW?

11     MR. MARKELS: Again, objection. That's not

12 what it states. But go ahead and answer as best you

13 can.

14     A  Can you repeat the question?

15 BY MR. LEVINE:

16     Q  Other than this document, did you see any

17 other document that would indicate ownership of the

18 BMW?

19     MR. MARKELS: Same objection. Go ahead.

20     A  Nothing with Ms. Mahdavi's name on it. No.

21 This is the only -- again, the only title that I

22 recall seeing with anybody's name on it.

---

**42**

1 BY MR. LEVINE:

2     Q  Okay. So you didn't see any document that

3 had NextGear's name on it stating that it owned or

4 had an interest in the BMW?

5     A  The email that was forwarded to us.

6     Q  And nothing else besides the email?

7     A  No.

8     Q  Did Mr. Kelley ever tell you any statements

9 that Mrs. Mahdavi made to him?

10     A  No.

11     Q  Has PAR Services done any investigation on

12 whether or not Mrs. Mahdavi owns the BMW?

13     A  No. We were always contacted by Pentagon

14 Federal Credit Union or your attorneys' office.

15     Q  So is it fair to say that what PAR Services

16 knows about Mrs. Mahdavi's interest in the vehicle,

17 it only knows what others have told it?

18     A  Correct.

19     Q  And does PAR Services have any information

20 that would show that Mrs. Mahdavi was involved in any

21 fraudulent activity with respect to the BMW?

22     A  We would have no knowledge of that.

---

**43**

1     (PAR Exhibit 7 was marked for

2 identification and attached to the deposition

3 transcript.)

4 BY MR. LEVINE:

5     Q  If you could look at what's been marked as

6 PAR 7.

7     A  Okay.

8     Q  Do you recognize this document?

9     A  I do.

10     Q  And had you seen this letter prior to

11 preparing for the deposition?

12     A  Yes. This is the letter that I received or

13 that PAR had received via certified mail. And this

14 is the letter that prompted us to go into the vehicle

15 to see if there were any belongings in there. And

16 that's how we determined there was no money and no

17 jewelry.

18     Q  Now, if Pentagon Federal Credit Union sent

19 you information on the 20th, regarding its interest

20 in the vehicle, why did you wait until you received

21 this letter before going into the car to inventory

22 it?

---

**44**

1     A  Repeat that again. I'm sorry.

2     Q  If you knew that Pentagon Federal Credit

3 Union was claiming interest in the vehicle, but you

4 didn't do an inventory at that time?

5     A  Well, the driver did a condition report and

6 indicated on the condition report that the vehicle

7 was locked. We didn't have any need to go into the

8 vehicle at that time. We didn't feel a need to go

9 into the vehicle until we received this letter.

10     Q  And why did you feel a need to do it

11 because of the letter?

12     A  Because the customer -- Ms. Mahdavi, was

13 insinuating that there was money and a Cartier watch

14 in the vehicle. So at that time, we felt that it was

15 necessary to check into the vehicle, to get into the

16 vehicle to see if there was any of these items in

17 there. You know, when somebody says there's money or

18 a watch, then -- other than that, we try to stay out

19 of the vehicle as much as possible unless we need to

20 go into the vehicle.

21     Q  The vehicle was on PAR Services's secured

22 lot?

---

45

1    A    Correct.
2    Q    So if the vehicle would have stayed locked,
3    nothing would have been removed from the vehicle?
4    A    Correct.
5    Q    So why did you feel the need to open the
6    vehicle, again?
7    A    Again, you know, when Ms. Mahdavi is
8    claiming there is $2500 and a Cartier watch in the
9    vehicle, before that vehicle leaves to go to auction,
10   we want to see if these items are actually in there,
11   because once it leaves our lot and goes to the
12   auctions, you know, at that point if these items were
13   in there and it went to the auction, the auction
14   could easily come back and say no, this vehicle was
15   delivered here, there was nothing in the vehicle.
16        So we needed to remove that liability from
17   us.
18   Q    Do you only inventory vehicles if a vehicle
19   owner makes an allegation that there's specific
20   contents in it?
21   A    No.  The vehicle is inventoried when it's
22   repossessed.  If they cannot get into the vehicle,

46

1    they have to put in that it's locked.  If they can
2    see items through the window, they'll write it on the
3    condition report.  Prior to a vehicle going into the
4    auction, we have to clean all the personal property
5    -- and that's another reason, we have to clean all
6    the personal property out of the vehicle prior to
7    sending it to the auction.
8        We have to make our best effort to get into
9    the vehicle if it's locked, because the vehicles
10   technically cannot be sent to the auction without the
11   property.  But with this particular vehicle, with
12   everything that was going on, you know, it was
13   unlocked, we did an inventory report, we told Dave
14   what was in it, he told us leave whatever is in there
15   in there, and send it to the auction.
16        Which there wasn't anything in there other
17   than a set of boxing gloves and some paperwork.
18   Q    But if the letter didn't come in and it was
19   going to auction, you would have opened the vehicle
20   and inventoried it?
21   A    Yes.  Yes.
22   Q    So you didn't need the letter to make the

47

1    determination?
2    A    No.  But when we received the letter, we
3    immediately went into the vehicle, so they didn't
4    unlock it the day before it was going to the auction.
5    We got the vehicle on the 20th.  And when did we
6    receive the letter?  The 23rd.  So -- or whatever
7    date the -- was it the 23rd?
8        She sent the letter -- I don't know if we
9    received it on the 23rd or if that's the date that
10   she wrote it.  Oh, the 23rd.  That's the day we went
11   into it.  The day that we received the letter.
12   Q    Do you have any knowledge of NextGear's
13   claims against BW Auto?
14   A    No.
15   Q    Has PAR Services had any involvement in the
16   litigation between NextGear services and BW Auto?
17   A    No.
18   Q    You haven't had to give any testimony in
19   that matter?
20   A    No.
21   Q    Provide any documents?
22   A    No.  The only documents that I've provided

48

1    have been to our attorney and the documents that I
2    had -- that are in here that were sent to Dave
3    Freeman.
4    Q    Do you know who PAR Services dealt with at
5    Manheim when the BMW was being delivered?
6    A    Not specifically.  They would have dropped
7    it off, and when they go to the gate, they check the
8    vehicle in, get their condition report stamped, and
9    then they are told where to put the vehicle at.
10   Q    So the document that's PAR Services 000079?
11   A    Yes.  I don't have a number on the bottom
12   here, but I'll take your word for it.
13   Q    This.
14   A    That's it, yes.
15   Q    What's Securitas Security?
16   A    That's just the Spanish and English.
17   Q    That's not a company name?
18   A    No.  It's security -- I'm assuming --
19   because they have Spanish speaking drivers, so I'm
20   almost certain -- does anybody know Spanish in the
21   room?  I think that's Spanish for "security."
22   Q    Where it says "Subject to inspection,"

Case 1:14-cv-00648-TCB   Document 58-15   Filed 12/16/14   Page 14 of 25 PageID# 639
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

13 (Pages 49 to 52)

---

49

1  "date, time, and security," there's no Spanish.
2      A   No, sir, I don't know, is that a Spanish
3  word? I'm just asking. I don't know. Is that
4  "security" in Spanish?
5      Q   I don't know.
6      A   This is the auction -- this is what they
7  stamped on here.
8      Q   Okay. And it says in handwriting above
9  that, "Deliv to BW," it looks like "AE."
10     A   Right.
11     Q   What's BWAE?
12     A   Baltimore-Washington Auto Exchange.
13     Q   And is that Manheim?
14     A   It is.
15     Q   Did you ever speak to George Davis at
16  Pentagon Federal?
17     A   Yes, I did. He's the one that initiated
18  the -- kind of got the ball rolling, I guess.
19     Q   And what was your conversation with him?
20     A   He contacted our office and stated that we
21  repossessed the vehicle and that they did not order
22  the repossession. And I pulled up Pentagon Federal

---

50

1  Credit Union in our system and I saw that we didn't
2  have any vehicles for them currently on our lot. And
3  so that's when I pulled up the last six of the VIN
4  number, and then saw that it was for NextGear.
5      Q   And you provided that information to him?
6      A   I did.
7      Q   Did you just have one --
8      A   Actually no. I did not provide that
9  information to him. I told him I would need to get
10  his number and contact him back. Because at that
11  point, I didn't know if it was him. We get people
12  that call in all the time and say they're this person
13  or that person.
14         So I needed to be able to identify that
15  that was actually Pentagon Federal Credit Union and
16  that it wasn't a bogus call. So I told him I would
17  call him back. So I found a number for Pentagon
18  Federal Credit Union that I knew was a good number.
19  I contacted that number. And that time I actually
20  got a woman on the phone who I spoke with.
21     Q   Do you recall who that person was?
22     A   I don't remember her name. She's the

---

51

1  person that gave me this information here.
2      Q   Why was she giving you information about
3  Mrs. Mahdavi's employer?
4      A   She was just giving me information on
5  Ms. Mahdavi. I explained to her we picked up the car
6  for NextGear. She was saying, "No, we have this loan
7  through somebody else," and she gave me the
8  information that she had. You know, it wasn't
9  something that I requested. She just said, "Here's
10  the information that I have, this is our vehicle that
11  we financed and this is what we have on file."
12     Q   When you say this is what we have financed,
13  did she give you information about the loan,
14  Mrs. Mahdavi's loan?
15     A   No. Well, they sent over the title. And I
16  don't know if the loan information is on the cover
17  sheet. But she just said that they had a -- that
18  that car was currently -- they held the note on that
19  car.
20     Q   Okay.
21     A   So repossession verification. Okay. So
22  they just sent the verification sheet. So no, they

---

52

1  didn't send me the terms of the contract or anything
2  like that.
3      Q   Okay. So they -- what number is that,
4  PAR...
5      A   6.
6      Q   6. That was sent to you as a followup to
7  your conversation with David George -- George Davis?
8      A   Correct. He faxed this information over.
9  He faxed it over and called. And that's when I
10  followed up and contacted Pentagon and spoke with the
11  woman there. And I don't remember her name.
12     Q   And did anyone at Pentagon Federal Credit
13  Union tell you -- give you any instructions on what
14  to do with the vehicle?
15     A   No.
16     Q   Did you ask for any instructions from them?
17     A   No. I gave them NextGear's information and
18  advised them to contact NextGear.
19     Q   And then you never heard back from Pentagon
20  Federal?
21     A   No.
22         MR. LEVINE: That's all I've got.

---

---

53

1          MR. BRAGDON:  Nothing.

2          MR. MARKELS:  Done.  We'll read.

3          THE REPORTER:  Mr. Markels, are you

4    ordering a copy of this transcript?

5          MR. MARKELS:  Yes.

6          THE REPORTER:  And Mr. Bragdon?

7          MR. BRAGDON:  Yes.

8          (Signature having not been waived, the

9    deposition of PAR SERVICES, INC., By and through its

10   Corporate Designee, APRIL MARIE RECTOR, was concluded

11   at 3:39 p.m.)

---

54

1          ACKNOWLEDGEMENT OF DEPONENT

2          I, APRIL MARIE RECTOR, do hereby

3    acknowledge that I have read and examined the

4    foregoing testimony, and the same is a true, correct

5    and complete transcription of the testimony given by

6    me, and any corrections appear on the attached Errata

7    sheet signed by me.

8

9    _____  _____

10   (DATE)          (SIGNATURE)

---

55

1    CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

2          I, Lee Bursten, the officer before whom the

3    foregoing deposition was taken, do hereby certify

4    that the foregoing transcript is a true and correct

5    record of the testimony given; that said testimony

6    was taken by me stenographically and thereafter

7    reduced to typewriting under my direction; that

8    reading and signing was requested; and that I am

9    neither counsel for, related to, nor employed by any

10   of the parties to this case and have no interest,

11   financial or otherwise, in its outcome.

12          IN WITNESS WHEREOF, I have hereunto set my

13   hand and affixed my notarial seal this 27th day of

14   November, 2014.

15   My commission expires June 30, 2019.

16

17

18

19   _____

20   LEE BURSTEN

21   NOTARY PUBLIC IN AND FOR

22   THE DISTRICT OF COLUMBIA

DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

56

## A

**able**
9:16 11:11,16
23:18 50:14
**access**
33:13,20
**accident**
12:17
**accurate**
19:11,14 20:5
**acknowledge**
54:3
**ACKNOWLE...**
54:1
**acting**
15:22
**activity**
42:21
**add**
20:20
**adding**
22:14,15
**additional**
21:1 23:1
**address**
5:15 26:2,3 28:6
28:9,10,12 29:4
**administering**
2:18
**advised**
16:22 17:18
38:16 52:18
**AE**
49:9
**affixed**
55:13
**agent**
15:12
**ago**
12:10
**agreement**
2:15 10:2
**ahead**
8:18 13:13 21:6
27:21 31:10
41:3,12,19
**al**

**1:9**
**Alexandria**
1:3
**allegation**
11:6 13:10 45:19
**ALLNUTT**
3:4
**allowed**
18:3
**answer**
8:4,18 11:5,11
19:3 21:7 31:11
41:3,12
**answered**
19:4
**answers**
4:11 11:17 19:11
**anybody**
13:18 48:20
**anybody's**
41:22
**appear**
54:6
**appreciate**
8:12
**approached**
17:10
**approximately**
12:10
**April**
1:15 2:2 4:2 5:2,8
53:10 54:2
**April/May**
24:4
**Arlington**
3:6
**arrive**
32:12
**ascertain**
29:15,18 31:3
**asked**
7:3 26:3
**asking**
32:1 49:3
**asks**
27:16,18
**assistance**

**19:6**
**assisted**
19:4,9
**assume**
12:4 30:14 32:5
**assumed**
17:12
**assuming**
28:7 48:18
**Atchison**
33:2
**attached**
4:7 6:21 18:20
19:16 20:11
21:2 39:2 43:2
54:6
**attachment**
26:6
**attempted**
16:18
**attorney**
13:17 14:1 48:1
**attorneys**
13:21 42:14
**attorney's**
15:2
**auction**
34:20 35:12 45:9
45:13,13 46:4,7
46:10,15,19
47:4 49:6
**auctions**
45:12
**authorized**
38:7
**Auto**
47:13,16 49:12
**awake**
30:21
**aware**
14:17 30:19

## B

**B**
4:6
**back**
32:10 35:8 40:5
45:14 50:10,17

**52:19**
**badge**
18:9
**ball**
49:18
**Baltimore**
3:20
**Baltimore-Was...**
36:2 38:1 49:12
**barring**
21:6
**basically**
13:3
**basis**
14:14
**Bates**
22:15
**behalf**
3:2,9,16 38:20
**believe**
14:6 15:2 16:20
17:20 18:6,8
28:10 35:9 41:5
**belongings**
43:15
**belongs**
37:1
**best**
11:17 19:12 20:4
41:12 46:8
**big**
14:7
**bit**
10:7
**block**
17:11
**BMW**
9:6 11:1,7,14
15:20 16:19
21:14 24:11
25:21 26:4 28:2
28:4 31:4 32:8
35:6 38:2 40:19
40:22 41:10,18
42:4,12,21 48:5
**bogus**
50:16

**bottom**
22:2 40:11,12
48:11
**boxing**
33:19 46:17
**Bragdon**
3:17 37:7,16
38:12 53:1,6,7
**breach**
29:5
**break**
10:6 22:11
**break-in**
34:4
**briefly**
37:10
**brother**
25:17
**Bursten**
1:22 2:15 55:2,20
**business**
6:4 18:7 23:6,8
23:14 25:18
**BW**
36:1,3 47:13,16
49:9
**BWAE**
49:11

## C

**C**
1:5 3:1 4:1 5:1
**call**
26:19 50:12,16,17
**called**
7:20 25:11 34:4
36:15 52:9
**calling**
36:16
**CAMPBELL**
2:6 3:11
**Capital**
1:8 3:16 16:18
**car**
16:22 17:4,4 29:4
29:6 33:22 35:4
38:6 43:21 51:5
51:18,19

Case 1:14-cv-00648-TCB Document 58-15 Filed 12/16/14 Page 17 of 25 PageID# 642
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

57

card
18:7
care
6:1
cars
26:20
Cartier
44:13 45:8
case
1:7 6:16 12:15
13:18 14:15
18:7 21:18
55:10
certain
48:20
CERTIFICATE
55:1
certified
2:16 33:8,14
43:13
certify
55:3
chain
9:6,13,17 10:21
changed
24:2
Charles
3:19
check
28:16 31:7 44:15
48:7
checked
28:21
checking
31:2
checks
32:22
child
35:3
circumstances
6:16 14:15
claim
36:12 37:5 38:9
38:10
claiming
44:3 45:8
claims

47:13
clean
46:4,5
client
23:6 31:14,16,20
32:3,5 35:19
Clinton
5:12,13,15 32:11
32:13
code
5:16
Columbia
2:18 55:22
come
6:1 16:21 26:21
30:16 45:14
46:18
commission
55:15
common
27:18
company
6:5 13:4,4 38:11
38:16 48:17
complete
54:5
concluded
53:10
condition
44:5,6 46:3 48:8
confused
36:3
contact
23:21 24:5 50:10
52:18
contacted
16:21 26:1 36:14
36:15 38:10,12
38:15 42:13
49:20 50:19
52:10
contents
33:4 34:15,17,18
45:20
contract
23:11,14,16 52:1
conversation

49:19 52:7
copies
21:13
cops
17:17
copy
18:5,6 35:10
40:20 41:5 53:4
corporate
1:14 2:2 7:11
53:10
correct
9:18 10:1 14:2
18:12 19:7,10
19:13 24:12,18
32:7 36:3 40:1
40:17 42:18
45:1,4 52:8 54:4
55:4
corrections
54:6
counsel
5:5 19:6,8 20:22
21:9 37:12
38:19 55:9
couple
17:15
COURT
1:1
courts
37:14
cover
21:19 38:6 39:18
40:6,8 51:16
create
34:6
credit
36:15,16 39:10,19
40:4,14 42:14
43:18 44:2 50:1
50:15,18 52:12
CRR
1:22
current
14:19,21
currently
50:2 51:18

customer
44:12

_____
D
D
3:17 5:1
DANIELS
3:4
date
12:19 15:20
35:11 47:7,9
49:1 54:10
Dave
24:21 25:2,22
26:18 28:6
35:22 36:16,18
37:4,17 39:17
39:20 46:13
48:2
David
52:7
Davis
40:6 49:15 52:7
day
23:16 29:6 39:13
39:20 40:2 47:4
47:10,11 55:13
days
33:6 35:16
day-to-day
5:20,22
DC
1:16 2:9 3:13
dealership
26:19,21 37:2
dealerships
26:18
dealt
48:4
defendant
3:9,16 4:10,13
13:1
Defendants
1:10
Deliv
49:9
deliver
35:19

delivered
35:12,21 37:22
45:15 48:5
delivery
35:22
Dennis
25:8
Denny
24:7,17 25:2,8,11
25:13,14,15
26:1
DEPONENT
54:1
deposed
12:7
deposition
1:13 2:1 4:8,9
6:21 7:15,19 8:1
11:20 13:22
14:4 18:20
19:16 20:11
25:10 27:18
39:2 43:2,11
53:9 55:3
designations
8:15
Designee
1:14 2:2 53:10
determination
18:2 47:1
determine
25:22
determined
43:16
determining
25:21
different
24:2
direct
11:8 24:5
direction
8:11 55:7
directly
36:7
discuss
16:7
discussed

13:18 16:3
**discussions**
16:10
**District**
1:1,2 2:17 55:22
**Division**
1:3
**document**
4:17 7:8 19:1,19
20:1 39:7,9,14
41:8,16,17 42:2
43:8 48:10
**documents**
4:16 7:16 14:3,5
14:12 20:8,15
20:17,18,21
21:2 22:16 23:1
35:8 39:6 41:9
47:21,22 48:1
**doing**
23:13
**door**
16:19,21 17:5
29:14 30:2,3,4,5
30:7,9,16
**doorbell**
29:12,22 30:4
**Drive**
28:10
**driven**
24:9
**driver**
12:16 13:2 18:3
26:22 27:13
28:1 44:5
**drivers**
27:2 48:19
**driveway**
28:8,9,11
**driving**
13:7 17:11
**dropped**
48:6
**duly**
5:3

_____
E
_____
**E**

3:1,1 4:1,6 5:1,1
**early**
29:9
**easily**
45:14
**EASTERN**
1:2
**EDWARD**
3:3
**effort**
46:8
**email**
21:1 24:22 25:3,5
25:6 26:6 42:5,6
**emailed**
24:18,19 25:2
**emails**
20:7
**employed**
15:19 55:9
**employee**
12:20 15:17
37:16
**employees**
6:3 34:12
**employer**
5:9 22:4 51:3
**employment**
16:1
**English**
48:16
**entered**
28:18
**Errata**
54:6
**ESQUIRE**
3:3,10,17
**et**
1:8
**EVELIUS**
3:18
**event**
38:6
**everybody**
18:6
**everything's**
19:13

**exact**
29:8
**exactly**
27:10 30:10
**EXAMINATION**
4:2 5:5
**examined**
54:3
**example**
10:21 32:1
**Exchange**
49:12
**Exhibit**
4:7,9,10,13,17,18
4:20 6:20 18:19
19:15 20:10
39:1 43:1
**EXHIBITS**
4:8
**expires**
55:15
**explained**
51:5
**extent**
8:2 41:4

_____
F
_____
**facility**
32:10,16
**facts**
6:15 13:18 14:15
**fair**
12:5,6 42:15
**Fairway**
28:10
**familiar**
6:15 20:1,15
21:21
**family**
25:18
**far**
13:20,20 14:16
16:12 17:8
**fax**
21:19 35:10
36:21 39:18
40:5,8
**faxed**

36:17 39:17,20
52:8,9
**Federal**
36:15 39:10,19
40:3,14 42:14
43:18 44:2
49:16,22 50:15
50:18 52:12,20
**fee**
23:14
**feel**
44:8,10 45:5
**felt**
44:14
**female**
15:3
**file**
51:11
**files**
27:8
**Filing**
4:19
**finance**
26:18
**financed**
37:3 51:11,12
**financial**
55:11
**find**
37:8,11,15 38:13
**fine**
8:12 9:19 36:22
**First**
4:11,14
**firsthand**
15:10
**five**
23:10 26:20
**followed**
52:10
**follows**
5:4
**followup**
52:6
**foregoing**
54:4 55:3,4
**form**

8:18
**forwarded**
42:5
**found**
17:16 50:17
**four**
23:10
**fraudulent**
42:21
**Freeman**
24:21 25:2 26:1
26:10,13 27:13
28:1 35:22 36:5
36:9,11 37:4,17
39:17 48:3
**Freeman's**
25:10
**Friday**
21:1
**full-time**
12:20

_____
G
_____
**G**
5:1
**gain**
33:13,20
**GALLAGHER**
3:18
**gate**
32:21 48:7
**general**
6:6
**generally**
26:15 31:17
35:17,18
**gentleman**
17:18
**George**
40:6 49:15 52:7,7
**getting**
14:7 16:11 38:14
**give**
7:13,21,21 8:6,13
12:18 17:21
27:4,6 47:18
51:13 52:13
**given**

11:19 40:13,16
54:5 55:5
**gives**
27:2
**giving**
13:20 17:3 51:2,4
**gloves**
33:19 46:17
**go**
8:18 10:12 13:12
21:6,10,13
23:18 26:3
27:21 29:4 31:9
31:15 41:3,12
41:19 43:14
44:7,8,20 45:9
48:7
**goes**
25:6 26:18 45:11
**going**
8:17 10:12 12:4
14:20 17:16
30:13,13 35:8
37:2,9,11,15
38:13 43:21
46:3,12,19 47:4
**good**
11:7,14 32:5
50:18
**gotten**
7:16
**guess**
17:2 49:18
**guy**
17:14 33:15
**guys**
14:7 33:15

**H**

**H**
4:6
**hand**
55:13
**handle**
6:2
**handwriting**
49:8
**happened**

16:8,11,14,15
29:21
**happening**
17:18
**hard**
33:11,12
**head**
27:11
**heard**
52:19
**held**
2:3 51:18
**hereunto**
55:12
**he'll**
27:4
**Highway**
3:5
**hit**
13:3
**home**
29:15
**hooked**
17:4,5,6 30:1
**hours**
29:9
**house**
17:8
**husband**
16:22 17:2,12,20
36:20

**I**

**ID**
21:17,17
**identification**
6:21 17:22 18:20
19:16 20:11
39:2 43:2
**identified**
7:14 9:1
**identifies**
7:20
**identify**
50:14
**IDs**
17:21
**immediately**

47:3
**improperly**
13:11
**incorrect**
25:11
**indicate**
41:17
**indicated**
41:9 44:6
**individual**
10:9 32:21
**individually**
10:16
**individuals**
32:22
**indoors**
32:19
**info**
22:4
**information**
9:9,10,13,17,21
10:17 11:2,9,13
11:18 13:20
16:12 19:5 24:9
31:17,21,21
32:4 36:18 37:8
38:18 42:19
43:19 50:5,9
51:1,2,4,8,10,13
51:16 52:8,17
**initial**
25:6
**initially**
23:13 33:5
**initiated**
49:17
**inside**
17:9
**insinuating**
44:13
**inspection**
21:14 48:22
**instance**
27:12
**instruct**
8:6
**instructions**

8:13 52:13,16
**insurance**
6:2 13:4 38:5,9
38:10,11,16
**interest**
4:19 10:22 11:3
42:4,16 43:19
44:3 55:10
**interrogatories**
4:12 19:5
**introduced**
4:7
**inventoried**
45:21 46:20
**inventory**
33:4 35:1 43:21
44:4 45:18
46:13
**investigation**
42:11
**involve**
13:5
**involved**
12:17 14:16 15:7
42:20
**involvement**
14:18 38:2 47:15
**irrelevant**
41:3
**issues**
15:6 37:2
**items**
7:22 44:16 45:10
45:12 46:2

**J**

**JACKSON**
2:6 3:11
**JAMES**
3:10,17
**jewelry**
33:9 43:17
**job**
1:20 5:18
**JODI**
1:5
**JONATHAN**
3:3

**JONES**
3:18
**Joseph**
33:2
**June**
55:15

**K**

**Kelley**
15:14 16:4,10
18:10 28:13
32:8 42:8
**kept**
38:14
**keys**
16:20 17:3,6 30:2
**kind**
5:22 6:4 7:17
24:22 27:5 33:3
34:6 37:8 49:18
**kit**
34:4,13
**knew**
17:13 44:2 50:18
**knocked**
16:19 17:5 29:14
30:2,4,6,9,16,22
**know**
10:6 11:9,10 12:1
15:4 16:12,13
17:1 18:4,10
24:3,19 25:3
27:1,7,9,9,11
29:8,18 30:10
30:10,11,13,21
31:1 32:14,15
32:20 35:15
37:9,10 38:18
39:16 40:3
44:17 45:7,12
46:12 47:8 48:4
48:20 49:2,3,5
50:11 51:8,16
**knowledge**
11:17 14:14
15:10 19:12
20:4 22:22 23:2
42:22 47:12

**knows**
8:2,8 42:16,17
**K-E-L-L-E-Y**
15:16
**K-E-L-L-Y**
15:15

**L**

**large**
26:16
**law**
18:2
**lawsuit**
12:21 14:20,21
38:12,17
**lawsuits**
13:9
**leave**
29:5 46:14
**leaves**
45:9,11
**leaving**
17:9
**Lee**
1:22 2:15 3:5
55:2,20
**left**
17:3,6,7,7,14 32:9
34:21
**letter**
4:20 33:8,14
43:10,12,14,21
44:9,11 46:18
46:22 47:2,6,8
47:11
**Let's**
14:21 35:9
**Levine**
3:3,4 4:3 5:6 7:3
7:7 8:5,10,14,21
13:16 18:22
19:18 20:14
21:3,5,8,11,22
22:3,7,10,14,18
27:22 31:19
39:4 41:7,15
42:1 43:4 52:22
**liability**

45:16
**light**
30:3,6,8,11,12
**limited**
23:3
**Lisa**
37:19
**list**
26:5,9,11,17 27:3
27:7,8
**listed**
24:14,16 25:1
**litigation**
38:3 47:16
**little**
10:7
**LLP**
3:18
**loan**
51:6,13,14,16
**located**
5:11 23:16
**location**
16:17 25:21,22
**locked**
32:21 33:6,6,12
44:7 45:2 46:1,9
**log**
24:15,17
**long**
6:9,11 23:8 29:4
30:15,19 35:6
37:19
**look**
6:19 10:9 20:7
21:10 38:21
40:5,11 43:5
**looks**
7:17 22:7 35:10
49:9
**loss**
38:6
**lot**
14:10 17:10
32:17,22 35:18
40:15 44:22
45:11 50:2

**M**

**Mahdavi**
1:5 4:20 11:14
16:20 17:2
18:15,17 24:10
30:5,16 33:8
42:9,12,20
44:12 45:7 51:5
**Mahdavi's**
15:1 17:12,20
28:4,7,18 36:12
37:5 41:20
42:16 51:3,14
**mail**
14:8,22 33:7
38:15 43:13
**mailed**
14:5
**male**
17:11
**manager**
5:19 6:11,13
**manages**
32:21
**managing**
6:2
**Manheim**
21:15 34:20 36:2
36:3 38:1 48:5
49:13
**Marie**
1:15 2:2 4:2 5:2,8
53:10 54:2
**marked**
6:19,20 18:19
19:15,21 20:8
20:10 22:5,15
38:21 39:1 43:1
43:5
**Markels**
3:10 7:1 8:2,7,17
13:12 20:22
21:4,6,12 22:1,5
22:9,17 27:16
27:21 31:9,12
41:2,11,19 53:2
53:3,5

**Maryland**
3:20 4:18 5:12,13
12:14 32:11
**matches**
28:16
**matter**
9:22 22:20 47:19
**matters**
7:14,20 8:22
**mean**
10:5 11:16 14:9
15:1 16:13 20:2
20:2 21:4 31:21
**meet**
27:13 28:1
**meets**
26:22
**Merit**
2:16
**met**
36:9
**moment**
13:15 19:1,19
**Monday**
1:17
**money**
33:9 43:16 44:13
44:17
**morning**
29:9,10,13,19
**multiple**
34:12

**N**

**N**
3:1,10 4:1,1 5:1
**name**
5:7 18:4,9 33:2
40:8 41:20,22
42:3 48:17
50:22 52:11
**named**
38:11,17
**nature**
6:3
**necessary**
44:15
**need**

27:2 32:3 44:7,8
44:10,19 45:5
46:22 50:9
**needed**
45:16 50:14
**neither**
55:9
**never**
36:9 40:20 52:19
**NextGear**
1:8 3:16 9:11
10:19 11:9
14:11 16:18
23:5,6,12,15,22
24:3,5 34:20
37:5,17 38:13
39:15 40:18
47:16 50:4 51:6
52:18
**NextGear's**
10:22 11:3 42:3
47:12 52:17
**night**
16:5,14,16
**North**
3:19
**notarial**
55:13
**Notary**
2:17 55:21
**note**
20:22 51:18
**notes**
21:18 40:10,13
**notice**
4:9,18 7:14,19
9:1
**noticed**
30:6
**notification**
14:22
**notified**
15:1 34:20
**November**
1:17 55:14
**number**
11:5 18:7,8,9

Case 1:14-cv-00648-TCB  Document 58-15  Filed 12/16/14  Page 21 of 25 PageID# 646
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

61

19:3 26:16
28:16 31:2
48:11 50:4,10
50:17,18,19
52:3
**numerous**
24:16
**NW**
2:7 3:12

**O**

**O**
4:1 5:1
**oath**
2:18
**object**
8:12,17
**objection**
8:6 13:12 31:9
41:2,11,19
**obtain**
16:20
**obviously**
15:5
**occurred**
16:5,13
**office**
6:2 14:6 15:2,4
37:13 42:14
49:20
**officer**
18:4,13 21:18
32:9 55:2
**officers**
17:22 18:1
**officer's**
18:8 21:17
**offices**
2:3
**officiated**
2:18
**Oh**
20:6 21:3 26:8
47:10
**okay**
6:18 7:6 9:4,5,5
9:12,19 10:4,12
10:15,17,20

11:12,15,19
12:3,21 14:11
14:22 19:2,20
19:22 20:6,13
21:3,5,9 23:20
24:19 25:3,8
26:13,19 27:12
27:20 28:18
29:21 30:11,15
31:13,20 32:12
34:12 36:11
40:7 41:8 42:2
43:7 49:8 51:20
51:21 52:3
**once**
15:3 17:1,1 33:14
37:7 45:11
**ones**
10:10,20
**ongoing**
36:19
**open**
45:5
**opened**
33:17,17 34:1,3
46:19
**order**
30:10 31:15
49:21
**ordering**
53:4
**original**
23:16
**originally**
15:1 24:8 38:12
**outcome**
55:11
**outdoors**
32:19,20
**outside**
38:3
**owned**
36:12 42:3
**owner**
45:19
**ownership**
41:10,17

**owns**
37:6 42:12

**P**

**P**
3:1,1 5:1
**page**
4:2,8 21:19 25:6
25:6 26:12
**pages**
1:21 22:8
**pair**
33:19
**paper**
36:21
**paperwork**
27:3,4,5,10 28:17
33:19 46:17
**Par**
1:13 2:1 3:9 4:8
4:10,13,17,20
5:10,11 6:4,9,19
6:20 7:11 8:2,8
9:12,16,21 11:2
11:5,12 13:1,10
13:10 14:17
15:10,17,19
18:19 19:15,21
20:8,10,17,20
21:20 22:5,15
22:16,20 23:4
23:11,21,21
24:7,17 25:5,11
25:18,20 26:6
31:3 33:3 35:6
35:15 37:22
38:1,5,22 39:1
40:11 42:11,15
42:19 43:1,6,13
44:21 47:15
48:4,10 52:4
53:9
**parking**
17:10
**part**
39:5
**particular**
46:11

**parties**
55:10
**part-time**
12:20
**PAR's**
8:8 35:13
**pay**
12:18,19
**PC**
2:6 3:11
**peace**
29:5
**pending**
7:1
**PenFed**
21:20
**Pentagon**
22:3 36:14 39:10
39:18 40:3,14
42:13 43:18
44:2 49:16,22
50:15,17 52:10
52:12,19
**people**
24:2 25:1 29:19
50:11
**perform**
33:3
**permission**
29:1
**person**
13:3 19:4 36:10
50:12,13,21
51:1
**personal**
46:4,6
**personally**
8:9 14:17
**phone**
17:13 50:20
**pick**
26:21 29:4 31:15
**picked**
27:2 51:5
**pinpoints**
27:1
**place**

**parties**
5:16 13:19
**plaintiff**
1:6 3:2 5:5 11:6
**Plaintiff's**
4:11,14
**please**
5:7 12:1
**PLLC**
3:4
**pocket**
34:7
**point**
23:20 45:12
50:11
**police**
17:22 18:1,13
21:17,18 32:9
**possessed**
40:19
**possession**
35:14
**possible**
44:19
**Possibly**
29:11
**preparation**
14:3
**preparing**
13:22 43:11
**present**
33:22
**pretty**
14:8
**prior**
37:12 43:10 46:3
46:6
**Probably**
10:14
**problem**
27:17
**problems**
6:1
**proceed**
18:3
**process**
36:10
**produce**

Case 1:14-cv-00648-TCB   Document 58-15   Filed 12/16/14   Page 22 of 25 PageID# 647
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

62

31:16
**produced**
20:17 22:20 25:4
**production**
4:15,17 20:18,21
39:6
**prompted**
43:14
**property**
28:4,7,19,21 29:2
35:7 46:4,6,11
**provide**
9:2 11:16 14:11
26:13 39:14
47:21 50:8
**provided**
11:10 16:18 19:5
26:10 28:6,12
47:22 50:5
**providing**
26:5
**Public**
2:17 55:1,21
**pull**
23:17 27:8
**pulled**
17:17 49:22 50:3
**Pursuant**
2:15
**put**
32:17 46:1 48:9

───────────
**Q**
**question**
7:1 8:19 11:5,8
11:10 12:1,4
19:3 26:8 27:17
27:19 41:14
**questions**
8:4 10:5,18
**quick**
22:11

───────────
**R**
**R**
3:1 5:1
**rang**
29:12,22 30:4

**read**
53:2 54:3
**reading**
55:8
**really**
10:6 36:20
**Realtime**
2:16
**rear-ended**
13:8
**reason**
46:5
**recall**
7:9 12:15 13:14
13:15 14:13
21:11 30:9 35:3
37:18,20 39:12
41:22 50:21
**receive**
39:9 47:6
**received**
21:16 33:7,14
39:12,13 40:20
43:12,13,20
44:9 47:2,9,11
**receiving**
37:12,13 38:14
**Recess**
22:13
**recognize**
39:6 43:8
**record**
55:5
**records**
23:19
**Rector**
1:15 2:2 4:2 5:2,8
25:8,8,13,14,16
53:10 54:2
**Rector's**
21:17
**reduced**
55:7
**refer**
10:19
**reference**
24:9

**reflected**
41:2
**regarding**
43:19
**Registered**
2:16
**related**
55:9
**relating**
13:10
**relationship**
23:4,7,9 25:15
**relevance**
13:12 31:9
**rely**
32:3
**remained**
33:6 34:17,19
35:13
**remember**
33:15,16 34:10,11
50:22 52:11
**remove**
34:21 45:16
**removed**
45:3
**repeat**
8:19 41:14 44:1
**report**
21:14,14 44:5,6
46:3,13 48:8
**Reported**
1:22
**Reporter**
2:16,17 53:3,6
**REPORTER-N...**
55:1
**repossess**
16:19 23:7 26:3
26:16 32:3
35:17
**repossessed**
13:11 15:12,20
27:14 28:2,5
29:7 35:9,11
39:22 40:2
45:22 49:21

**repossesses**
38:6
**repossessing**
31:6
**repossession**
6:5 13:5,7,19
14:19 15:5,8,11
16:3,6,10,14,16
24:15 29:3
31:15 39:13
49:22 51:21
**repossessions**
6:7,8
**representative**
7:11 8:8
**request**
4:15 20:18,21
35:20 36:1,5,7
39:5
**requested**
35:22 51:9 55:8
**requests**
35:19
**residence's**
26:2
**respect**
42:21
**response**
20:18,20
**responses**
4:14 39:5
**responsibilities**
5:21
**responsive**
23:1
**rest**
11:18
**retained**
38:19
**retaining**
37:12
**revert**
35:8
**review**
7:4 14:3,10 19:1
19:19
**right**

**repossesses** column

9:10 37:22 40:10
49:10
**RMR**
1:22
**road**
17:15,19
**roadwork**
17:16
**rollback**
13:7
**rolling**
49:18
**room**
48:21
**run**
17:14,19 22:12

───────────
**S**
**s**
3:1 4:1,6,10,13
5:1
**saw**
40:21 41:6 50:1,4
**saying**
8:7 36:17 51:6
**says**
21:10 44:17
48:22 49:8
**scene**
32:9
**schedule**
23:15
**scope**
15:22
**seal**
55:13
**seat**
35:4
**secured**
32:18 44:21
**Securitas**
48:15
**security**
4:18 48:15,18,21
49:1,4
**see**
30:2 31:7 35:9
41:9,16 42:2

Case 1:14-cv-00648-TCB   Document 58-15   Filed 12/16/14   Page 23 of 25 PageID# 648
DEPOSITION OF CORPORATE DESIGNEE, APRIL MARIE RECTOR
CONDUCTED ON MONDAY, NOVEMBER 17, 2014

63

41:9,16 42:2
43:15 44:16
45:10 46:2
**seeing**
7:9 41:22
**seen**
7:8 43:10
**send**
26:17 31:17,21
37:8 46:15 52:1
**sending**
46:7
**sends**
31:14
**sent**
14:7 21:1,10 24:8
24:17 33:9
34:19 38:18
39:16,19 40:4,6
43:18 46:10
47:8 48:2 51:15
51:22 52:6
**services**
1:13 2:1 3:9 4:10
4:13 5:10,11 6:4
6:9 7:11 9:13,17
9:21 11:2,12
13:1,10,11
15:10,17,19
21:20 22:6,16
22:20 23:5,12
23:21,21 25:18
25:20 26:6 31:3
33:3 35:15
37:22 38:2,5
42:11,15,19
47:15,16 48:4
48:10 53:9
**Services's**
11:6 14:18 35:6
44:21
**set**
4:11 46:17 55:12
**sheet**
24:15 39:18 40:6
40:9 51:17,22
54:7

**SHORTHAND**
55:1
**show**
40:18 42:20
**showing**
21:15
**sic**
24:7,17
**Signature**
53:8 54:10
**signed**
23:15 54:7
**signing**
55:8
**similar**
27:7
**sir**
49:2
**sits**
35:18
**sitting**
28:11
**six**
50:3
**sleep**
30:21
**sleeping**
29:19
**somebody**
44:17 51:7
**sorry**
7:2 8:20 11:4
26:8 34:9 44:1
**sort**
21:13
**sound**
21:20
**South**
2:8 3:12
**Spanish**
48:16,19,20,21
49:1,2,4
**speak**
18:13,15 36:11
37:4 49:15
**speaking**
37:21 48:19

**specific**
45:19
**specifically**
48:6
**spoke**
14:1 17:2 37:7
50:20 52:10
**spoken**
15:3 18:17
**spotted**
26:1,20
**stack**
14:7 20:8
**stamp**
21:15
**stamped**
22:16 48:8 49:7
**start**
14:21
**started**
23:13
**starts**
25:6
**state**
5:7 12:12
**stated**
49:20
**statements**
42:8
**states**
1:1 19:3 41:12
**stating**
33:7,9 42:3
**stay**
44:18
**stayed**
45:2
**stenographically**
55:6
**stopped**
17:8
**storage**
32:10,16,17
**Street**
2:7 3:12,19
**stuff**
37:13,14 38:15

**subject**
7:13,20 8:22 9:21
11:1,7 48:22
**submit**
23:18
**subsequent**
16:9
**suing**
13:3,4
**suit**
36:19
**Suite**
3:19
**supplied**
9:11
**supposed**
31:11
**sure**
5:8 7:5,19 8:22
10:11 27:10
28:16
**sworn/affirmed**
5:3
**system**
50:1

_____
**T**
**T**
4:1,1,6
**take**
6:1,18 18:2 19:1
19:19 20:7
22:11 28:15
32:8 34:18 36:1
48:12
**taken**
55:3,6
**technically**
46:10
**telephone**
36:8
**tell**
10:9 16:15 26:19
28:13 29:21
42:8 52:13
**telling**
8:11
**ten**

6:12 26:20 35:15
**terms**
52:1
**Terrence**
15:14
**testified**
5:3
**testify**
8:8,11,16 9:16,20
9:20
**testimony**
7:13,21,22 9:2
12:18 47:18
54:4,5 55:5,5
**Thank**
11:19
**thing**
33:18
**things**
6:3 10:8 12:19
14:6 17:9
**think**
10:18 11:11,15,15
22:10 33:8
48:21
**three**
21:1
**time**
8:19 12:17 17:7
24:6 26:22 29:6
29:8,16 30:22
32:12 33:10
44:4,8,14 49:1
50:12,19
**times**
12:7 17:15
**title**
5:18 9:6,14,17
10:21 11:7,14
26:14 31:4,7,17
31:22 32:2,3,6
40:18,21 41:21
51:15
**told**
18:11 30:1 42:17
46:13,14 48:9
50:9,16

**tool**
34:7
**top**
27:11
**Tower**
2:8 3:12
**towing**
6:6
**transcript**
4:7 6:22 18:21
    19:17 20:12
    39:3 43:3 53:4
    55:4
**transcription**
54:5
**tried**
17:11,14,19
**true**
19:11 20:5 54:4
    55:4
**trunk**
33:21
**try**
16:19 44:18
**trying**
37:11,14
**turn**
16:22
**Twentieth**
2:7 3:12
**twice**
15:3 37:7
**two-minute**
22:11
**typewriting**
55:7
**typical**
31:6
**typically**
26:18

**U**
**unable**
8:16 9:2
**understand**
7:10,18 8:10 9:6
    10:6,8,10 11:22
    12:1,4

**union**
36:15,16 39:10,19
    40:4,14 42:14
    43:18 44:3 50:1
    50:15,18 52:13
**UNITED**
1:1
**unlock**
47:4
**unlocked**
46:13
**unlocks**
34:7
**use**
34:5,13
**usually**
23:20 27:5

**V**
**v**
1:7
**vehicle**
13:11 15:12 16:4
    17:11 18:3 24:9
    26:2 27:13
    28:11,14,15
    30:1 31:3,7,8,15
    31:18 32:2,16
    33:4,5,10,11,12
    33:18 34:6,8,16
    34:17,18,19,19
    35:18 36:13,17
    37:1,6 38:1
    39:21 40:15
    42:16 43:14,20
    44:3,6,8,9,14,15
    44:16,19,20,21
    45:2,3,6,9,9,14
    45:15,18,21,22
    46:3,6,9,11,19
    47:3,5 48:8,9
    49:21 51:10
    52:14
**vehicles**
23:7 24:14,16
    26:5,9,11,14,17
    27:1 45:18 46:9
    50:2

**verification**
51:21,22
**verified**
28:14
**VIN**
28:16,21 31:2
    50:3
**Virginia**
1:2 3:6

**W**
**wait**
27:16,18 39:16
    43:20
**waived**
53:8
**want**
10:8 21:13 45:10
**Washington**
1:16 2:9 3:13
**wasn't**
37:10 38:14
    46:16 50:16
    51:8
**watch**
5:22 44:13,18
    45:8
**way**
31:14
**wedge**
34:5
**went**
16:17 17:8 30:3
    45:13 47:3,10
**We'll**
53:2
**We're**
5:12
**we've**
27:9
**whatnot**
17:2
**WHEREOF**
55:12
**window**
46:2
**wire**
34:4

**witness**
2:19 8:6,11 27:20
    31:11,13 55:12
**woman**
50:20 52:11
**word**
48:12 49:3
**work**
5:13 26:14
**worked**
13:2 24:3 33:16
**working**
12:16
**works**
31:14
**worry**
36:22
**write**
46:2
**written**
23:11
**wrote**
35:1 47:10

**X**
**x**
1:4,11 4:6

**Y**
**yeah**
20:2
**year**
12:10,19 13:15
**yearly**
12:19
**years**
6:10,12 23:10
    24:1
**Yochelson**
5:16

**Z**
**zip**
5:16

**$**
**$2500**
45:8

**0**
**000073**
26:7
**000077**
22:16
**000079**
48:10

**1**
**1**
1:21 4:9 6:19,20
    19:3
**1:14-cv-00648-...**
1:8
**1:30**
29:10,12,19
**1120**
2:7 3:12
**15**
6:10
**17**
1:17
**18**
4:10
**19**
4:13

**2**
**2**
4:7
**2:32 p.m**
1:18
**20**
4:17
**20th**
35:10,11 43:19
    47:5
**20036**
2:9 3:13
**2014**
1:17 6:13 24:4
    35:12,13 55:14
**2019**
55:15
**202**
2:10 3:14
**20735**
5:17

**21201**
3:20
**218**
3:19
**22207**
3:6
**23rd**
47:6,7,9,10
**25**
11:5
**27th**
55:13

**3**

**3**
4:10 18:19
**3:39 p.m**
53:11
**30**
55:15
**30th**
35:12
**39**
4:18

**4**

**4**
4:13 19:15,21
**400**
3:19
**410**
3:21
**43**
4:20
**457-1600**
2:10 3:14

**5**

**5**
4:3,17 20:9,10
22:15 25:5
**5/20**
35:12
**5/23/14**
4:20
**5/30**
35:13
**525-2668**

3:7
**5311**
3:5
**55**
1:21

**6**

**6**
4:9,18 38:22 39:1
40:11 52:5,6
**6504**
5:16
**69**
25:6

**7**

**7**
4:20 43:1,6
**7-Eleven**
17:8,10
**70226**
1:20
**703**
3:7
**727-7702**
3:21
**73**
26:9,12
**74**
25:7 26:12
**75**
22:7
**76**
22:8
**77**
21:2 22:9,10
**78**
22:16
**79**
21:2 22:9,10,16

**9**

**915**
28:10