**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

JODI C. MAHDAVI,

       Plaintiff,

       v.                                        Civil Action No. 1:14-cv-0648

NEXTGEAR CAPITAL, INC.,

and

P.A.R. SERVICES, INC.

       Defendants.

**REPLY IN SUPPORT OF**
**NEXTGEAR'S MOTION FOR SUMMARY JUDGMENT**

NextGear Capital, Inc., respectfully submits this Reply in Support of its Motion for Summary Judgment (the "Motion"). As described below, Plaintiff Jodi Mahdavi has failed to demonstrate facts on which a jury can determine that her purchase of the BMW was "usual" or "customary."

**I.    Mr. Mahdavi's Fifth Amendment assertion gives rise to an adverse inference.**

Mrs. Mahdavi does not contest that her husband managed finances, sale proceeds, and vehicle inventory for Beltway Auto. She does not contest that there was fraud regarding the financing, sale, and inventory of vehicles at Beltway Auto, including with regard to her BMW. She does not contest that the sale was concealed from NextGear by her husband. She does not respond to NextGear's deposition and affidavit testimony that the title she has was obtained by

1

fraud.[1] Finally, she does not contest that her husband has a legitimate fear of criminal prosecution that extends to every aspect of the transaction—from the financing, to the purchasing, to the handling of the proceeds—as well as his communications with her. Instead, Mrs. Mahdavi claims her husband's Fifth Amendment assertion and fraudulent actions are not relevant or attributable to her.

As explained in NextGear's Motion, a nonparty's assertion of the Fifth Amendment is properly held against a party if there is a close relationship. *See LiButti v. United States,* 107 F.3d 110, 122 (2d Cir. 1997) (invocation of Fifth Amendment by nonparty witness supports adverse inference if there is a relationship of loyalty with a party). *See also United States v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 832 F. Supp. 644, 652 (S.D.N.Y. 1993); *Fed. Deposit Ins. Corp. v. Fid. & Deposit Co.,* 45 F.3d 969, 978 (5th Cir. 1995). Although these cases were cited in NextGear's Motion, Mrs. Mahdavi's opposition does not address them.

In *Libutti*, a seminal Fifth Amendment civil case, the Second Circuit identified four factors to determine whether a non-party's Fifth Amendment assertion gave rise to an adverse inference against a party. The four factors are: (1) the nature of the relevant relationships, (2) the degree of control of the party over the non-party witness, (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation, and (4) the role of the non-party witness

---

[1] Mrs. Mahdavi argues in opposition that NextGear "offers no facts to support" the assertion that Beltway Auto was obtaining fraudulent titles. This is incorrect. See Motion at 4 (citing Freeman Dep. (Ex. 3) at 27:18 – 28:3 and Long Aff. (Ex. 2), ¶ 7) (discussing process in which Beltway Auto obtained duplicate copies of title from MVA in order to complete fraudulent sales). Mrs. Mahdavi does not provide evidence to counter NextGear's evidence. *See*, *e.g.*, Mahdavi Dep. (Ex. 8) at 28:3-10; 29:4-14 (denying any knowledge of how title was obtained or what her husband did to purchase the vehicle). It was impossible for Beltway Auto to obtain legally a duplicate copy of the BMW title while NextGear retained the original copy in its safe.

in the litigation. *Id.* at 123-24. Each of these factors favors application of the inference in this case.

First, the Mahdavis' marriage is a strong factor in favor of applying the inference: "The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship. . ." *Libutti*, 107 F.3d at 123. The relationship is "the most significant circumstance." *Id.*[2] *See also id.* at 124 (holding that father-daughter relationship supported application of negative inference from nonparty father's assertion of the Fifth Amendment against his daughter, a party to the litigation); *In re Adler, Coleman Clearing Corp.*, 1998 WL 182808, at *7 (Bankr. S.D.N.Y. Apr. 17, 1998) (applying adverse inference based on "significant informal family, friendship and business relationships"). *Cf. Cotton v. City of Eureka*, 2010 WL 2889498, at *4 (N.D. Cal. July 22, 2010) (rejecting application of adverse inference where there was no "close or special relationship" between party and nonparty witness, and the nonparty witness had actually assaulted the party).

The remaining three factors each support application of an adverse inference in this case. Mrs. Mahdavi's decision to empower her husband to control all aspects of the transaction supports the inference, because it shows the "degree of control which [Mrs. Mahdavi] has vested in the non-party witness . . ." *Libutti*, 107 F.3d at 123. Mr. Mahdavi's supporting role in controlling the transaction and trying to regain the BMW strongly supports an adverse interest, because it shows his interests are compatible with his wife's and that he is a key figure in this litigation. *See Lentz v. Metro. Prop. & Cas. Ins. Co.*, 768 N.E.2d 538, 543 (Mass. 2002) (applying *Libutti* factors and approving admission of nonparty's assertion of Fifth Amendment

---

[2] In a later appeal of *Libutti*, the Second Circuit approved of the trial court's decision to give "considerable weight" to the adverse inference because the father "dominated the business dealings" of the family company. *LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999)

because nonparty "played a key role in the underlying transaction"); *New Hampshire Ins. Co. v. Blue Water Off Shore, LLC*, 2009 WL 792530, at *9 (S.D. Ala. Mar. 23, 2009) (applying *Libutti* factors and holding that non-party had "financial and professional self-interest to deny" questions rather than plead the Fifth Amendment, thus supporting inference against party); *Garrish v. United Auto., Aerospace, & Agric. Implement Workers of Am.*, 284 F. Supp. 2d 782, 798 (E.D. Mich. 2003) (third and fourth *Libutti* factors met where witness's wrongful conduct was at issue and he was a "key figure in the underlying facts.").

Mrs. Mahdavi should not be allowed to escape the adverse inference of her husband's assertion of the Fifth Amendment when her husband was closely connected to her and her purchase of the BMW.  See *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 919 (N.D. Ill. 2013) (refusing to take favorable inferences for defendant at summary judgment and reasoning, "the Fifth Amendment can properly be called upon only when honest answers would tend to subject the answerer to criminal liability").[3]  Application of the adverse inference is "reasonable, reliable, relevant to the dispute, and fairly advanced against" Mrs. Mahdavi.  *Lentz,* 468 N.E.2d at 543.

## II.    Supporting evidence demonstrates the purchase was not "usual or customary."

Summary judgment is appropriate because other evidence supports the inference that the purchase was not "usual" or "customary," thus distinguishing this case from those cited by Mrs. Mahdavi where there was no supporting evidence other than the Fifth Amendment inference. *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) (summary judgment

---

[3]    The *Padilla* Court observed that a party seeking to avoid the inference of the Fifth Amendment "must advance something explaining a reason for his or her Fifth Amendment invocation other than guilty conduct. . ." *Id.*  Mrs. Mahdavi's opposition fails to do so.

#516027                                                    4

based on Fifth Amendment assertion is inappropriate if made "without regard to the other evidence"); *SEC v. Huttoe*, 1998 WL 34078092, at *1 (D.D.C. Sept. 14, 1998) (same).

It is uncontested Mrs. Mahdavi purchased the BMW without filling out title paperwork, without visiting the dealership, or without speaking with the financing company.[4] Additionally, a highly unusual fact is Mrs. Mahdavi received a $22,500 trade-in credit for giving Beltway Auto her Mercedes GLK, but that her husband "just brought . . . he brought the [GLK] back home." *See* Mahdavi Dep., Ex. 8 to Motion, at 44:9-12.; Purchase Agreement, Ex. 3 to Mahdavi Deposition (showing trade-in credit). She still drives the GLK, even after supposedly trading it into the dealership. Mahdavi Dep., Ex. 8 to Motion, at 40:10.

The unusual timeline of the "flooring" of the vehicle further supports the non-customary nature of the BMW purchase. No vehicle was supposed to be floored if it had already been sold; as David Freeman explained, to do so violated the contract. *See* Freeman Dep. Ex. 3 to the Motion, at 63:6-64:4. If Beltway Auto paid for the BMW in February 2014, it is unclear why Mr. Mahdavi concealed this sale from NextGear and purported to "floor" it in early April 2014. It is also unclear where NextGear's money went, since it apparently was not necessary to pay the previous seller for the vehicle. When asked to explain the unusual timing, Mr. Mahdavi asserted his Fifth Amendment Rights. *See* Mahdavi Answers, Ex. 6 to Motion, Nos. 47-48 (involving timing of financing and purchase and relation to fraud at Beltway Auto and the sale to Mrs. Mahdavi). These facts, and the concealment of them by Plaintiff's husband, further supports a finding that the sale occurred outside of the ordinary course of business.

---

[4] Mrs. Mahdavi claims that her failure to visit the dealership should be excused because we live in a "world of internet sales." Opposition at 13. But Mrs. Mahdavi did not purchase the vehicle over the internet, nor is there evidence that Beltway Auto sold cars over the internet.

#516027                                                 5

Mrs. Mahdavi argues instead that the purchase was in the ordinary course because she (1) signed a contract and received the BMW, (2) paid for the BMW, and (3) test-drove it. Yet, even these facts demonstrate the unusual circumstances of the transaction.

The purchase agreement itself is unusual because Mrs. Mahdavi used a shell address. The *Genesee* Court held that registration in a non-residential state was evidence that the purchase was not in the ordinary course of business. *Genesee Reg'l Bank v. Palumbo*, 799 N.Y.S.2d 883, 891 (N.Y. Sup. Ct. 2005). Mrs. Mahdavi claims that it was a business address, but this does not support her claim of a purchase in the ordinary course because:

- There was no company formed at the time, nor has one been formed since.

- There was no plan to transfer title of the BMW to the company.

- The Maryland address is not a business address, but the site of a residential demolition and rehabilitation. She intended to sell the property, not use it as a business address.

- Mrs. Mahdavi used the BMW as her personal vehicle. She has a day job and uses her vehicle to commute to that job.

*See* Motion at 8-9. Neither does Mrs. Mahdavi's Opposition explain why she incorrectly referred to the Temple Hills address as an occasional client's, when in fact it was the address of an auto-wholesaling company she owned. *Id.*; Exhibits 9, 10. Whatever her justification for using the property, it is not "usual" or "customary" for a car purchaser to use a vacant, demolished property as the address for their vehicle purchase contract.[5]

---

[5] NextGear posits that it is clear why the Mahdavis chose to register the BMW through a shell address in Maryland as opposed to their state of residence (Virginia), especially when considered in conjunction with Mr. Mahdavi's assertion of the Fifth Amendment. With a Maryland address, Mr. Mahdavi was able to simply print out title without having possession of the original title and, thus, without satisfying the lienholder. *See Genesee*, 799 N.Y.S.2d at 890 (describing how wife registered the vehicle in Maryland despite the fact that she did not have "the title document necessary to transfer such title"). In contrast to Maryland's system, Virginia's would have required submission of evidence that previous creditors have been paid.

Second, the alleged payment for the BMW is suspicious at best.  Mr. and Mrs. Mahdavi received a $64,000 check from Pentagon Federal on April 16, 2014.  This was **one day after** the fraud was discovered at Beltway, and the vehicles were claimed by NextGear, on April 15, 2014.  By that date, Mr. Mahdavi had already met with NextGear, discussed the fraud, and concealed the purported purchase of his wife's vehicle from NextGear.  NextGear does not know what Mr. Mahdavi did with the check because he refused to answer.  *See* Mahdavi Answers, Ex. 6 to Motion, at 13.[6]  There would be no basis for his refusal to answer if he properly deposited the check in Beltway's account or received no benefit from the check.

Third, her "test drive" of the vehicle demonstrates that the purchase was outside of the ordinary course.  Her husband brought the BMW home for her one weekend for her to use as a "test drive."  Mahdavi Dep., Ex. 8 to Motion, at 21:1-14.  She did not have to leave anything as security for the dealership.  She used the vehicle for the entire weekend, and then her husband used the vehicle intermittently as a personal vehicle for the next month before the transaction was finalized. *Id.* at 21:1-14; 25:10-22.  This is far from a usual or customary test drive.

Mrs. Mahdavi claims that the purchase was in the "ordinary course" because it was conducted in the same manner as *her* previous purchases from Beltway Auto.  The standard is not what is "ordinary" for Mrs. Mahdavi through the dealership her husband managed.  The

---

*Toyota Motor Credit Corp. v. Hyman Auto Wholesale, Inc.*, 42 Va. Cir. 502 (1997) (describing how issuance of new title required submission of letter from former creditor stating lien had been released).

[6]   The questions to which Mr. Mahdavi pleaded the Fifth Amendment included:  "Did you receive any financial benefit, direct or indirect, from the sale of the BMW to your wife?" and a request that he "Identify all persons who received a financial benefit, direct or indirect, from the sale of the BMW to your wife, and describe the nature of that financial benefit."  Mahdavi Answers, Ex. 6 to Motion, at pp. 4-5.

appropriate standard is what is ordinary for the industry, and Mrs. Mahdavi cannot meet this standard.

### III. NextGear's security interest in the BMW is valid and enforceable.

Mrs. Mahdavi misrepresents the nature of NextGear's security interest, and thus argues that there is a dispute of fact as to the validity of NextGear's title. She further argues that the unusual timeline regarding the "flooring" of the vehicle diminishes NextGear's claim. These arguments are not supported by facts and ignore the nature of the security agreement.

NextGear's contract with Beltway Auto gave it a perfected security interest in the entire vehicle inventory of Beltway Auto, whether it was purchased with NextGear's loan or not. *See* Promissory Note, Ex. 1 to Motion, § 2 (granting NextGear a security interest in all of Beltway's "assets and properties, wherever located, including without limitation . . . all Inventory now owned or hereafter required . . . ."). The security interest was perfected on the entire inventory from the date of purchase of any vehicle. *Id.* If NextGear's loan was used to purchase the vehicle, NextGear had the added protection of storing the title in its title vault. Titles were not issued in NextGear's name; rather, NextGear held the titles. *See* Freeman Dep., Ex. 3, at 55:9-16. NextGear's holding of the title was not necessary to perfect its security interest; it was intended to prevent unauthorized sales of the vehicles. Of course, Mr. Mahdavi and Beltway Auto found a way around this by obtaining fraudulent copies, including the copy of the BMW's title.

NextGear's interest in the BMW arises from both the purchase of the BMW by Beltway Auto, and Mr. Mahdavi's decision to floor-plan finance it in April 2014. Mr. Mahdavi handled the floor-plan financing and NextGear's account, and he was the one who placed the BMW on the accounts receivable and received money from NextGear in return. Because the security

interest applied to the whole inventory, Plaintiff's arguments regarding the timing of the flooring and the alleged "dispute" over the validity of the New York title are not valid.

### IV. There was no "breach of peace" or intentional act.

Mrs. Mahdavi claims that P.A.R. breached the peace when it repossessed the vehicle. This claim is incorrect as a matter of law. As P.A.R.'s reply brief in support of its motion for summary judgment explains, P.A.R.'s employees followed best practices for repossessing the vehicle without breaching the peace, and its actions fell well within the standards of Virginia law. *See Wallace v. Chrysler Credit Corp.*, 743 F. Supp. 1228, 1233 (W.D. Va. 1990); P.A.R Reply Brief, Doc. No. 60. NextGear hereby incorporates the arguments and facts contained in P.A.R's reply brief.

### CONCLUSION

At best, Mrs. Mahdavi lacks knowledge necessary for her claim; at worst, she was intentionally kept in the dark to preserve her claim for a vehicle obtained by fraud. Equity and policy favor holding the Mahdavis accountable for the design of the transaction and their litigation strategy. Mrs. Mahdavi can plead ignorance of the fraud only because she allowed her husband to control the transaction. She can argue that NextGear fails to defeat her claim only because her husband has concealed the details of the transaction from NextGear pursuant to the Fifth Amendment. Mr. Mahdavi managed the company throughout this fraud, received some unspecified financial benefit, concealed the transaction from NextGear, cashed the check after the fraud was uncovered and deposited it in an unspecified account, and yet still managed to transfer two vehicles to his wife and away from NextGear. This result is not the purpose of the "buyer in the ordinary course" rule under the UCC as adopted in Virginia.

Summary judgment should be granted in favor of NextGear.

Respectfully Submitted,

NextGear Capital, Inc.

By /s/ James D. Bragdon
James D. Bragdon (VSB #83681)
jbragdon@gejlaw.com
David G. Sommer
  *Admitted pro hac vice*
dsommer@gejlaw.com
Gallagher Evelius & Jones LLP
218 N. Charles St., Ste. 400
Baltimore, MD 21201
Telephone (410) 951-1416
Fax (410) 468-2786

Ashley W. Winsky (VSB #79224)
awinsky@mcguirewoods.com
McGuireWoods LLP
Court Square Building
310 Fourth Street N.E., Suite 300
Charlottesville, VA 22902-1288
434-980-2207 (Direct Line)
434-980-2269 (Fax)

*Counsel for NextGear Capital, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of December, 2014, I electronically filed a true and correct copy of the foregoing Motion, the Memorandum in Support, exhibits, and proposed order with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Jonathan E. Levine, Esq. | James N. Markels |
| LEVINE, DANIELS & ALLNUTT, PLLC | JACKSON & CAMPBELL, P.C. |
| Heritage Square | 1120 20th Street, N.W. |
| 5311 Lee Highway | South Tower, Third Floor |
| Arlington, VA 22207 | Washington, D.C. 20036 |
| Jonathan.levine@levinedaniels.com | jmarkels@jackscamp.com |
| *Counsel for Plaintiff* | *Counsel for P.A.R. Services* |

And will send a copy by Federal Express to:

> The Honorable Theresa C. Buchanan
> Magistrate Judge
> United States District Court
> Eastern District of Virginia
> Alexandria Division
> 401 Courthouse Squire
> Alexandria, Virginia 22314-5798

To the best of my knowledge there are no other parties who require service by other means.

    /s/  James D. Bragdon
James D. Bragdon (VSB #83681)
jbragdon@gejlaw.com
Gallagher Evelius & Jones LLP
218 N. Charles St., Ste. 400
Baltimore, MD 21201
Telephone (410) 951-1416
Fax (410) 468-2786

*Counsel for NextGear Capital, Inc.*