# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JODI C. MAHDAVI,

       Plaintiff,

       v.                                            Civil Action No. _____

NEXTGEAR CAPITAL, INC.,

and

P.A.R. SERVICES, INC.

       Defendants.

## AFFIDAVIT OF LISA LONG

I, Lisa Long, being over the age of 18 and competent to testify to the matters contained in this affidavit, state as follows:

1. I am a regional director of NextGear Capital, Inc. I am familiar with Mrs. Mahdavi's claims, and the dispute between NextGear and Beltway Auto.

2. Mrs. Mahdavi's husband, Alex Mahdavi, is the general manager for Beltway Auto, which is a dealer of used motor vehicles.

3. NextGear financed the purchase of much of Beltway Auto's used car inventory by providing a revolving line of credit of $1,400,000.

4. The financing made available to Beltway Auto is known as "floor plan financing." Each loan advance is made in relation to specific pieces of inventory. As each financed item of inventory is sold by the dealer, the loan advance for that specific vehicle is due and to be repaid. NextGear holds title to financed vehicles until it receives full repayment of the loan from Beltway Auto after a bona fide sale to a third party. NextGear has perfected its

security interest through a blanket UCC-1 financing statement covering all of Beltway Auto's inventory and assets.

5. On April 1, 2014, Beltway Auto used NextGear's financing to add three motor vehicles to its already large inventory. On April 2, 2014, Beltway Auto requested that NextGear increase the line of credit by $100,000 (from $1,400,000 to $1,500,000) for 30 days. On the same day and immediately after obtaining the additional credit, Beltway Auto obtained from NextGear financing for another five motor vehicles, for a total of eight vehicles in two days. One of these vehicles was Mrs. Mahdavi's $70,000 BMW.

6. On both April 16, and April 17, 2014, NextGear employees asked Beltway Auto's principal, Khazeyer Molavi, for the location of NextGear's financed inventory. Mr. Molavi would not provide any information about the location of NextGear's motor vehicles. Rather, Mr. Molavi admitted that he had multiple, unidentified people remove the inventory from Beltway Auto's lot because he feared Beltway Auto's creditors, including NextGear, would repossess the inventory.

7. NextGear discovered Beltway Auto defrauded NextGear by transferring an additional twenty or more motor vehicles serving as collateral without following the contractual requirements or paying the proceeds to NextGear. This includes the BMW at issue in this case. NextGear discovered that, although it holds title for these vehicles, Beltway Auto sold them to third party purchasers and obtained duplicate titles from the Maryland Motor Vehicle Administration. The MVA issued duplicate titles for the vehicles sold out of trust between April 15 and April 17, 2014. The total financed principal value for these 20 motor vehicles is approximately $473,035.47.

8. On April 18, 2014, NextGear informed Beltway Auto of an Event of Default under the applicable loan documents, accelerated the loan, demanded immediate possession of the collateral, and took physical possession of 15 motor vehicles that NextGear was able to locate in Beltway Auto's possession.

9. NextGear made repeated subsequent contacts with Beltway Auto seeking details regarding 30 motor vehicles that are physically missing and unaccounted for (including where they are located and whether they have been sold), as well as details regarding 20 motor vehicles Beltway Auto alleges it previously transferred without NextGear's knowledge.

10. NextGear attempted to locate the missing collateral, including the BMW, by searching property owned by affiliates of Beltway Auto and the company's owners and manager.

11. NextGear located the missing BMW in Mr. Mahdavi's driveway. NextGear engaged P.A.R. Services, Inc. to repossess the BMW. After the repossession, NextGear learned for the first time that Mrs. Mahdavi (Beltway Auto's manager's wife) claimed to have purchased the vehicle from Beltway Auto.

12. At a June 3, 2014 hearing on NextGear's replevin action against Beltway Auto, which I personally attended, Mr. Mahdavi appeared pursuant to a subpoena, invoked the privilege against self-incrimination under the Fifth Amendment, and refused to provide testimony or produce documents regarding his involvement in the fraudulent scheme to hide collateral. He asserted the privilege in response to every question concerning his role at Beltway Auto, the location and disposition of NextGear's collateral, and Beltway Auto's sales and operations. However, when asked specifically about the BMW, Mr. Mahdavi did not assert the Fifth Amendment privilege and, instead, claimed that the BMW had been sold to his wife by Beltway Auto.

I solemnly affirm under the penalties of perjury that the contents of the foregoing Affidavit are true.

_6-11-14_
Date

_Lisa Long_ (signature)
Lisa Long