IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JODI C. MAHDAVI,

       Plaintiff,

       v.                                            Civil Action No. 1:14-cv-0648

NEXTGEAR CAPITAL, INC.,

and

P.A.R. SERVICES, INC.

       Defendant.

## NAVID MAHDAVI'S RESPONSES TO NEXTGEAR CAPITAL, INC.'S NOTICE OF WRITTEN DEPOSITION

       Navid Mahdavi ("Respondent"), pursuant to an agreement with NextGear Capital, Inc. ("Proponent"), hereby responds to the written questions propounded by Proponent as follows:

       1.     Please see the copy of the Certificate of Title attached as Exhibit A, and answer the following questions:

          a.   Who filed the application for this title with MVA?

          b.   What information was provided in that application?

          c.   What documents were attached to that application?

          d.   Who completed the application and aggregated the documents?

          e.   What role did you play in drafting and submitting the application?

          f.   What role did Ms. Mahdavi play in drafting and submitting the application?

          g.   Ms. Mahdavi says that she received this title in the mail. Is that correct? When did that occur?

          h.   Do you contend that this title is accurate and grants actual title to the BMW to Ms. Mahdavi? If so, set forth why, identifying all persons or entities in the chain

of title from NextGear to Ms. Mahdavi.

**ANSWER**: Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

2. Please see the copy of the Certificate of Title attached as Exhibit B, and answer the following questions:

   a. Who filed the application for this title with MVA?

   b. What information was provided in that application?

   c. What documents were attached to that application?

   d. Who completed the application and aggregated the documents?

   e. What role did you play in drafting and submitting the application?

   f. What role did Ms. Mahdavi play in drafting and submitting the application?

   g. Ms. Mahdavi says that she received this title in the mail. Is that correct? When did that occur?

   h. Do you contend that this title is accurate and grants actual title to the BMW to Ms. Mahdavi? If so, set forth why, identifying all persons or entities in the chain of title from NextGear to Ms. Mahdavi.

**ANSWER**: Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

3. Please describe your job title at BW Auto, job description, and any involvement pertaining to obtaining copies of titles for vehicles to be sold.

**ANSWER**: Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

4. Please describe your role in your wife's alleged purchase of the BMW that is the subject of her lawsuit against NextGear.

**ANSWER**: Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

5. Were you the person responsible for submitting requests for duplicate or lost titles to the Maryland Vehicle Administration?

**ANSWER**: Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

6. Did you have access to the system at BW Auto for submitting requests to the MVA for duplicate titles or for transferring and registering titles?

**ANSWER**: Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

7. Identify all persons involved in submitting requests for duplicate or lost titles to the MVA.

**ANSWER**: Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

8. Describe in detail BW Auto's practice in 2014 for selling vehicles financed through BW Auto's loan with NextGear, and whether that practice was followed as regards your wife's purchase of her BMW.

**ANSWER**: Respondent declines to answer the question by asserting the privileges available

to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

9. Describe your knowledge of NextGear's security interest in the Collateral, including the BMW.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

10. Were you aware that fraudulent practices were occurring at BW Auto? Please describe in detail any knowledge you had.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

11. Identify all persons involved in any fraudulent practices that were occurring at BW Auto, and provide details regarding their involvement.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

12. Describe any and all communications you had with your wife regarding the fraudulent practices occurring at BW Auto.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

13. Did you receive any financial benefit, direct or indirect, from the sale of the

BMW to your wife?

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

14.     Identify all persons who received a financial benefit, direct or indirect, from the sale of the BMW to your wife, and describe the nature of that financial benefit.

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

15.     Describe any and all communications you had with your wife regarding your compensation package at BW Auto, including any financial benefits you received from the sale of the BMW or other collateral of NextGear to your wife.

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

16.     Describe your compensation agreement with BW Auto and/or Khazeyer Molavi in detail and explain whether you ever received any compensation, direct or indirect, from the sale of vehicles financed through NextGear's loan.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

17.     Did you receive any financial benefit, direct or indirect, from the fraudulent sale of other collateral to NextGear's loan?

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available

to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

18. Identify all persons who received a financial benefit, direct or indirect, from the sale of the other collateral to NextGear's loan and describe the nature of that financial benefit.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

19. Describe in detail your relationship (business and personal) with Khazeyer Molavi, including all business or personal activities on which you provided him assistance.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

20. Did you report all of the income you received in any form (salary, bonuses, profit sharing, etc.) from BW Auto, Khazeyer Molavi, and Sharon Nozary on your federal income tax returns?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

21. Describe fully any agreement or contract of any kind whatsoever you had with BW Auto, Khazeyer Molavi, and/or Shannon Nozary.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

22. Did you use the BMW for your personal transportation before completion of the purchase by your wife?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

23. Describe your involvement in completing paperwork for the purchase of your wife's BMW.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

24. Identify all persons who were involved in the completion of paperwork for the purchase of your wife's BMW and describe the nature of their involvement.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

25. Describe any and all communications you had with your wife regarding the completion of paperwork for the BMW.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

26. Why was NextGear not contacted to provide the actual copy of the title to the BMW to you or your wife as part of the purchase of your wife's BMW?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal

privileges, and therefore neither admits nor denies the question.

27. Describe any and all communications you had with your wife regarding the application for certificate of title for your wife's BMW.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

28. Why was a Maryland address used for the certificate of title for your wife's BMW when she resided in Virginia?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

29. Was your wife using the Maryland address used for the certificate of title as an active residence?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

30. Why did you use addresses for your wife's vehicle that was not an active residence or business location?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

31. Is it true that it was easier to obtain duplicate title without legitimate supporting documents from the MVA then from the Virginia Department of Motor Vehicles?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

32.   Were you aware of any legal requirements that your wife's BMW be titled and registered in the Commonwealth of Virginia?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

33.   Were you aware of any legal prohibitions against titling and registering your wife's BMW in the State of Maryland?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

34.   Did you ever discuss any legal requirement or prohibition regarding the decision to register and title the BMW in Maryland with your wife or any other person?  If so, identify that person and describe the nature of the communication.

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

35.   Why did you and/or your wife decide instead to title and register the vehicle in Maryland?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

36. Describe all communications you had with your wife regarding your or her decision to title and register the vehicle in Maryland.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

37. Did you or any other employee of BW Auto make a false statement on any application for title or other submission from the MVA or other Maryland state agency?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

38. When did you first learn of a plan to remove vehicles financed by NextGear from the premises at BW Auto to other locations?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

39. When David Freeman came to BW Auto on or about April 15, 2014, he discovered there were 30-40 missing vehicles from the Collateral. When were these vehicles moved off of the lot at BW Auto?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

40. Were you aware of the missing vehicles when you spoke to Mr. Freeman on the phone on the evening before his visit to BW Auto?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available

to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

41. Why did you not provide Mr. Freeman a copy of your wife's bill of sale when he came to BW Auto and spoke with you regarding missing collateral in April 2014?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

42. Why did you not inform Mr. Freeman of the purported sale of the BMW to your wife when he came to BW Auto and spoke with you regarding missing collateral in April 2014?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

43. Did you ever inform your wife of the fraudulent practices occurring at NextGear, including without limitation the fraudulent application and obtaining of duplicate titles?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

44. Describe in detail all communications with your wife regarding the BMW, including communications regarding its paperwork and title in Maryland.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

45. Did you ever tell your wife that BW Auto and/or Khazeyer Molavi were

experiencing financial difficulty?  If so, please provide the time, location, and content of these communications, and identify where any written or recorded versions of these communications are stored.

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

46.   Why did you and/or BW Auto decide to finance additional vehicles using NextGear's funds in April 2014?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

47.   Describe how the timing of the purchase of your wife's BMW related to the timing of BW Auto's financing of the vehicle with NextGear's loan.

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

48.   Describe how the timing of the purchase of your wife's BMW related to (i) the financial difficulty faced by BW Auto and (ii) the sale of collateral with fraudulently obtained duplicate title?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

49.   Describe any communications you had with your wife regarding the timing of her purchase of the vehicle, including how the timing of the purchase related to the fraud occurring at BW Auto.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

50. Describe fully any involvement your wife had in locating the BMW, arranging for financing, completing the purchase, and obtaining title for the BMW.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

51. When did you first learn that BW Auto was lying to NextGear regarding the sales of vehicles purchased with NextGear's money?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

52. When did you first learn that BW Auto and its employees were lying to the MVA to obtain duplicate title?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

53. Identify all persons involved in any way with the financing of your wife's vehicle with NextGear's money, the documentation of the purchase by your wife, and the removal of the BMW from BW Auto.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

54. What actions did you take to inform NextGear, the MVA, or law enforcement authorities when you learned that BW Auto and its employees were fraudulently obtaining duplicate copies of title?

**ANSWER:**  Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

55. Did you ever tell your wife that BW Auto and/or Khazeyer Molavi were acting to alienate collateral for NextGear's loan without informing NextGear?

**ANSWER:**  Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

56. Describe your involvement in removing vehicles from the lot at BW Auto in April and May 2014 to prevent repossession by creditors.

**ANSWER:**  Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

57. Identify all persons involved in removing vehicles from BW Auto in April and May of 2014, and describe the nature of the involvement.

**ANSWER:**  Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

58. What happened to the proceeds to BW Auto of the sale of the BMW to your wife?

**ANSWER:**  Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal

privileges, and therefore neither admits nor denies the question.

59. Did you take any action to ensure that the proceeds from the sale of the BMW went to NextGear?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

60. Was it your one of your job responsibilities to coordinate with NextGear to ensure that sale proceeds owed to NextGear were delivered?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

61. Did you or BW Auto inform NextGear of the sale of the BMW to your wife?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

62. Please describe any and all actions to ensure that the required procedure for informing NextGear of a sale of a financed vehicle took place with respect to your wife's BMW.

**ANSWER:** Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

63. After the BMW was repossessed, what investigation did you do to determine the validity of NextGear's interest in the BMW?

**ANSWER:** Respondent declines to answer the question by asserting the privileges available

to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

64.     Describe any communications you had with anyone regarding the repossession of the BMW.

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

65.     Did you discover any fraudulent activities at BW Auto after the BMW was repossessed?

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

66.     Describe in detail the circumstances around your termination of employment with BW Auto.

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

67.     Did you arrange for your wife's former vehicle, a Mercedes SUV, to be used as a trade-in credit for the purchase of the BMW?

**ANSWER:**     Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

68.     Describe any and all communications you had with your wife regarding the

decision to trade in her former vehicle, a Mercedes SUV, in relation to the purchase of the BMW.

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

69.   Did you remove your wife's former vehicle (a Mercedes SUV) from BW Auto and return it to her for personal use?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

70.   Did you inform Pentagon Federal Credit Union about your decision to remove your wife's former vehicle and return it for her personal use?

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

71.   Identify any person with whom you discussed the removal of the Mercedes SUV from BW Auto for return to your wife, and describe the nature of those communications.

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

72.   Please see the Affidavit of Lisa Long attached as Exhibit C.  Do you disagree with of the facts described in paragraphs 1-11 of her affidavit?  If so, please explain and provided detailed facts to support your position regarding Ms. Long's affidavit testimony in those paragraphs.

**ANSWER:**   Respondent declines to answer the question by asserting the privileges available

to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

      73.    Please see the copy of the purchase agreement attached as Exhibit D.  Please confirm that this is a correct copy of the purchase agreement and, if so, describe (1) what address is represented as being your wife's and (2) why that address was used rather than her residential address?

**ANSWER:**    Respondent declines to answer the question by asserting the privileges available to him under the Fifth (5th) Amendment of the United States Constitution and the spousal privileges, and therefore neither admits nor denies the question.

## **Deponent Verification**

      I hereby certify under the penalty of perjury that the foregoing Reponses to above written questions are true and accurate to the best of my information, knowledge and belief.

/s/ Navid Mahdavi                                                    Date:  November 19, 2014
Navid Mahdavi

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2014, I served a true and correct copy of the foregoing by first-class mail and electronic mail to the following:

Jonathan E. Levine, Esq.
LEVINE, DANIELS & ALLNUTT, PLLC
Heritage Square
5311 Lee Highway
Arlington, VA 22207
Jonathan.levine@levinedaniels.com
*Counsel for Plaintiff*

James N. Markels
JACKSON & CAMPBELL, P.C.
1120 20th Street, N.W.
South Tower, Third Floor
Washington, D.C. 20036
jmarkels@jackscamp.com
*Counsel for P.A.R. Services*

James D. Bragdon (VSB #83681)
jbragdon@gejlaw.com
David G. Sommer
*Admitted pro hac vice*
dsommer@gejlaw.com
Gallagher Evelius & Jones LLP
218 N. Charles St., Ste. 400
Baltimore, MD 21201
Telephone (410) 951-1416
Fax (410) 468-2786

Ashley W. Winsky (VSB #79224)
awinsky@mcguirewoods.com
McGuireWoods LLP
Court Square Building
310 Fourth Street N.E., Suite 300
Charlottesville, VA 22902-1288
434-980-2207 (Direct Line)
434-980-2269 (Fax)
*Counsel for NextGear Capital, Inc.*

                                              /s/  Marc E. Shach
                                              Marc E. Shach