IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

JODI C. MAHDAVI,

    Plaintiff

v.

NEXTGEAR CAPITAL, INC.                       Case No. 1:14-cv-0648-TSE-TCB

and

P.A.R. SERVICES, INC.,

    Defendants.

    _____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO NEXTGEAR CAPITAL, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT**

    COMES NOW Jodi C. Mahdavi, by counsel, pursuant to FED. R. CIV. P. 56 and for her Memorandum in Opposition to NextGear Capital, Inc.'s Amended Motion for Summary Judgment[1], and in support thereof respectfully states as follows:

## I. INTRODUCTION

    This action involves the ownership of a used BMW. Plaintiff, Jodi C. Mahdavi ("Mrs. Mahdavi"), bought the BMW in good faith, without knowledge that the sale might have violated the rights of another in the BMW, and in the ordinary course from a used automobile dealership. Defendant, NextGear Capital, Inc. ("NextGear"), has moved for summary judgment against Mrs. Mahdavi, putting a sinister spin on facts and leaping to conclusions regarding the sale of the BMW. Mrs. Mahdavi incorporates the facts and arguments set forth in her Memorandum in Opposition to P.A.R. Services, Inc.'s Amended Motion for Summary Judgment filed

---

[1] Mrs. Mahdavi references and incorporates Docket #58, Opposition to NextGear's Motion for Summary Judgment, as if set forth herein.

concurrently herewith, and she disputes NextGear's facts and conclusions asserted in its Memorandum in Support of Amended Motion for Summary Judgment ("NextGear Memo").

Mrs. Mahdavi's husband worked at a used car dealership, Beltway Auto Brokers, LLC ("Beltway Auto").  Not surprisingly, she has purchased vehicles, including the BMW, from her husband's employer.  She purchased the subject BMW in the same manner that she purchased other vehicles from Beltway Auto.

NextGear is a creditor of Beltway Auto.  Beltway Auto has apparently defaulted on its loan with NextGear.  In its zeal to repossess collateral to satisfy its loan, NextGear cast too wide a net when it repossessed Mrs. Mahdavi's BMW.  Under the Uniform Commercial Code ("UCC"), as enacted in Virginia, a buyer in the ordinary course of business takes free of the security interest of a seller's creditor.  The purpose of the UCC is to protect such buyers when they purchase goods from businesses dealing in such goods.  Here, the material facts are those elements that show that Mrs. Mahdavi is a buyer in the ordinary course and therefore can defeat NextGear's claim to the BMW.  Those material facts are that Mrs. Mahdavi contracted for the sale of the BMW from an automobile dealership who sold it to her in the normal course of business, she paid fair market value for the BMW by using her own funds for a down payment and securing a loan for the remaining purchase price through an independent bank, she obtained possession of the BMW, and she received a valid Maryland certificate of title for the BMW.  Mrs. Mahdavi did all this without any knowledge of any claim NextGear had against Beltway Auto or in the BMW.  NextGear's security interest, if any, is in the proceeds from the sale of the BMW, and its dispute is with its defaulting borrower, Beltway Auto.  When the material facts are viewed in a light most favorable to Mrs. Mahdavi, the non-moving party, a genuine dispute exists as to those facts so that the instant motion must fail.

## II.     STATEMENT OF DISPUTED MATERIAL FACTS

Mrs. Mahdavi disputes the following material facts that NextGear claims are undisputed:[2]

1.     NextGear contends that "NextGear financed the purchase of the BMW by Beltway Auto Brokers, LLC ("Beltway Auto") a used vehicle dealer, through its floor-plan financing agreement." NextGear Memo at p. 2, ¶ 1 (citing NextGear Exh. 1, September 30, 2013 Demand Promissory Note and Loan and Security Agreement).  While NextGear may have been a creditor of Beltway Auto, it did not provide the purchase money for the BMW, and instead, under the terms of NextGear's agreement with Beltway Auto, NextGear's only interest in the BMW is in its sale proceeds, which it can recoup from Beltway Auto.  *See* Beltway Loan Agreement, attached hereto as Exhibit 1, at p. 2.  The evidence shows that NextGear did not finance Beltway Auto's purchase of the BMW because the BMW was purchased by Beltway Auto in February 2014, two months <u>before</u> NextGear claims it financed the BMW in April 2014. *See* NY Retail Certificate of Sale No. 47099067 attached hereto as Exhibit 2 (showing the sale of the BMW to Beltway Auto on February 20, 2014); Retail Purchase Agreement, attached hereto as Exhibit 3, (showing the sale of the BMW to Mrs. Mahdavi on March 11, 2014); *see also* Deposition of NextGear's Corporate Representative, David Freeman, ("Freeman Dep.") attached hereto as Exhibit 4, at 63:6–8 ("Q: And you mentioned before that the BMW was sold before NextGear financed it? A: Correct."); Receivable Detail Report attached hereto as Exhibit 5, (showing the BMW's "floor date" as April 4, 2014).  As a result, NextGear's security interest, if any, was only in the proceeds of the sale of the BMW. *See* Exh. 1, Beltway Loan Agreement at p. 2; Exh. 4, Freeman Dep. at 64:10–12.

---

[2] Mrs. Mahdavi hereby adopts and incorporates by reference the Statement of Disputed Material Facts and Exhibits in Mahdavi's Opposition to P.A.R. Services, Inc.'s Amended Motion for Summary Judgment filed in connection with the above-referenced case.

2.     NextGear contends that "At Beltway Auto, the financing and sale of vehicles were handled by Navid "Alex" Mahdavi, Mrs. Mahdavi's husband (hereinafter, "Mr. Mahdavi"). Mr. Mahdavi was the general manager of the lot and managed NextGear's inventory." NextGear Memo at p. 2, ¶ 6 (citing NextGear Ex. 2, Long Aff., ¶ 2). NextGear speculates that Mr. Mahdavi handled all of the financing and sales of vehicles. *See* Exh. 4, Freeman Dep. at 25:15–21. When Beltway Auto allegedly defaulted on its loan with NextGear it was Khazeyer Molavi, the owner and individual guarantor for the Beltway Loan Agreement that NextGear looked to for answers, not Mr. Mahdavi. *See* Exh. 4, Freeman Dep. at 34:22–35:6; *id.* at 47:22–48:12; *see also* Exh. 1, Beltway Loan Agreement. Furthermore, there is evidence to suggest that Mr. Mahdavi did not handle all aspects of the financing and sale of the subject BMW. Mr. Mahdavi is not the individual who signed the Retail Purchase Agreement between Beltway Auto and Mrs. Mahdavi. *See* Exh. 3, Retail Purchase Agreement; Affidavit of Jodi C. Mahdavi dated December 16, 2014 ("Mahdavi Affidavit"), attached hereto as Exhibit 6, at ¶¶ 4–5.

3.     NextGear contends that "[w]hen a financed vehicle was sold, Mr. Mahdavi was required to send funds to NextGear within 48 hours." NextGear Memo at p. 3, ¶ 8 (citing NextGear Exh. 3, Freeman Dep. at 57:9–15). NextGear wishes to conflate Mr. Mahdavi and Beltway Auto. NextGear's loan agreement was with Beltway Auto, and only Khayezer Molavi and Shala Nozary were the individual guarantors. *See* Exh. 1, Beltway Loan Agreement; *see also* Exh. 4, Freeman Dep. at 34:22–35:6; 47:22–48:12.

4.     NextGear contends that "NextGear still possesses the original, valid title to the BMW." NextGear Memo at p. 3, ¶ 10 (citing NextGear Exh. 3, Freeman Dep. at 55:9–13; NextGear Exh. 4, New York Title). NextGear's claim of "original, valid title" is a material disputed fact, questionable at best and is superseded by Jodi Mahdavi's original title issued by

the Maryland Department of Motor Vehicles and dated April 11, 2014 (the "Maryland Title") and attached hereto as Exhibit 7.  Mrs. Mahdavi asserts that her title to the BMW issued by the State of Maryland is valid. *See* Exh. 7, Maryland Title; *see also* Deposition of Jodi C. Mahdavi ("Mahdavi Dep."), attached hereto as Exhibit 8, at 60:2–7.  Her name is on the title. *See* Exh. 7, Maryland Title.  Nowhere on the title does it say that it is a duplicate.  The title shows only the security interest of PFCU. *Id.*  In support of its assertion of possessing original, valid title, NextGear presents a title clearly says "COPY" across both the front and back, and shows that the BMW was sold from Financial Services Vehicle Trust ("FSVT") to Burdick BMW in January 2014 (the "New York Title"). *See* New York Title, attached hereto as Exhibit 9.  NextGear is not listed on the New York Title.  *See id.*

     5.     NextGear contends that "[t]he BMW was financed by Beltway Auto in early April 2014, and was one of sixty vehicles Beltway Auto was supposed to hold as security for NextGear's loan at that time."  NextGear Memo at p. 3, ¶ 11 (citing NextGear Exh. 3, Freeman Dep. at 55:9–13; NextGear Exh. 2, Long Aff. ¶ 4.)  NextGear erroneously claims that the vehicle was bought at auction with proceeds from NextGear. *See* Exh. 4, Freeman Dep. at 53:12–20; *id.* at 55:9–13.  The evidence shows that NextGear did not finance Beltway Auto's purchase of the BMW because the BMW was purchased by Beltway Auto in February 2014, two months <u>before</u> NextGear claims it financed the BMW in April 2014. *See* Exh. 2, NY Retail Certificate of Sale No. 47099067 (showing the sale of the BMW to Beltway Auto on February 20, 2014); Exh. 3, Retail Purchase Agreement (showing the sale of the BMW to Mrs. Mahdavi on March 11, 2014); Exh. 4, Freeman Dep. at 63:6–8; Exh. 5, Receivable Detail Report (showing the BMW's "floor date" as April 4, 2014).  As a result, NextGear's security interest, if any, was only in the proceeds of the sale of the BMW. *See* Exh. 1, Beltway Loan Agreement at p. 2; Exh. 4, Freeman

Dep. at 64:10–12.

6. NextGear contends that "NextGear has a perfected security interest in the BMW as part of Beltway Auto's inventory." NextGear Memo at p. 3, ¶ 12 (citing NextGear Exh. 5). NextGear's security interest is in the proceeds of the sale of the BMW, which under the terms of NextGear's agreement with Beltway Auto it can collect from Beltway Auto. *See* Exh. 1, Beltway Loan Agreement at p. 2; *see also supra* ¶ 5.

7. NextGear contends that "In the aftermath of NextGear's discovery [of Beltway Auto's default], NextGear learned that Beltway Auto's fraudulent scheme had involved obtaining duplicate titles from the Maryland Vehicle Administration and then selling cars without informing or paying NextGear." NextGear Memo at p. 4, ¶ 23 (citing NextGear Exh. 3, Freeman Dep. at 27:18 – 28:3; NextGear Exh. 2, Long Aff., ¶ 7). NextGear goes on to say that it is undisputed that "Although NextGear possessed original titles to these vehicles, Beltway Auto obtained duplicate titles from the Maryland Motor Vehicle Administration and sold them to third party purchasers." NextGear Memo at p. 4, ¶ 24 (citing NextGear Exh. 3 Freeman Dep. at 27:18 – 28:3; NextGear Exh. 2, Long Aff., ¶ 7). These are material disputed facts. NextGear's theory of Beltway Auto's alleged fraud and the alleged fraud's connection to the subject BMW is mere speculation and is unsupported by the evidence. Mrs. Mahdavi asserts that her title to the BMW issued by the State of Maryland is valid. *See* Exh. 7, Maryland Title; Exh. 8, Mahdavi Dep., at 60:2–7. Her name is on the title. Exh. 7, Maryland Title. Nowhere on the title does it say that it is a duplicate. The title shows only the security interest of PFCU. *Id.* Furthermore, NextGear fails to show that Mrs. Mahdavi was involved in or knew of Beltway Auto's fraudulent scheme.

8. NextGear contends that "[a]t the time of the repossession, NextGear was unaware of any purported sale of the BMW." NextGear Memo at p. 5, ¶ 28 (citing NextGear Exh. 3,

Freeman Dep. at 43:10-17).  Whether NextGear knew or had reason to know that the BMW might have been sold is a material fact in dispute.  Beltway Auto did not have to get NextGear's authorization before selling a vehicle. *See* Exh. 4, Freeman Dep. at 64:18–65:7.  The only due diligence NextGear did to ascertain whether any vehicle had been purchased was to ask Beltway Auto during one meeting, and Beltway Auto, whose records were incomplete after a break-in, allegedly produced unsigned bills of sale which satisfied NextGear. *Id.* at 45:3–13; *id.* at 35:2–12.  The facts show that Mrs. Mahdavi paid for the BMW, received possession of the BMW, and received title for the BMW. *See, e.g.,* Exh. 6, Mahdavi Affidavit.

      9.      NextGear contends that "[t]hroughout discovery, Mrs. Mahdavi provided no details regarding the purchase. She claims she was the one who decided to purchase the BMW, but she did not work out the details of the purchase." NextGear Memo at p. 6, ¶ 37 (citing NextGear Exh. 8, Mahdavi Dep. at 21:14-22, 28:11-14).  NextGear offers no support as to what duties, if any, Mrs. Mahdavi had to "work out the details", but a complete look at the record shows that at the time that Mrs. Mahdavi was interested in this specific type of BMW, her husband located one and brought it home for her to test-drive, she liked it and decided to purchase it for its fair market value. *See* Exh. 8, Mahdavi Dep. at 20:2–6; *id.* at 20:21–21:13; *id.* at 21:14–16.  The portion of Mrs. Mahdavi's deposition transcript that NextGear uses to support its claim that she did not "work out the details" regarding the purchase is misleading and taken out of context.  Mrs. Mahdavi did not testify that she never worked out the details of the purchase at any point, just that the details were not worked out at the time that she test-drove the BMW. *See* Mahdavi Dep., Exh. 8, at 21:3–22:4.  The test-drive occurred two months before NextGear had listed the BMW on its receivable report, and two months before Beltway Auto allegedly defaulted on NextGear's loan. *See id.; see also* Exh. 3, Retail Purchase Agreement

(showing the sale of the BMW to Mrs. Mahdavi on March 11, 2014); Exh. 5, Receivable Detail Report (showing the BMW's "floor date" as April 4, 2014); Exh. 4, Freeman Dep. at 20:22–21:2. The evidence shows that Mrs. Mahdavi was interested in this specific type of BMW and told her husband about her interest. *See* Exh. 8, Mahdavi Dep. at 20:2–6.  Mrs. Mahdavi's husband located one and brought it home for her to test-drive in March 2014. *Id*. at 20:21–21:13.  Mrs. Mahdavi liked the BMW and decided to purchase it. *See id.* at 21:14–16.  She contracted with Beltway Auto and purchased the BMW for its fair market value.  *See* Exh. 3, Retail Purchase Agreement; Exh. 4, Freeman Dep. at 61:9–11. This occurred one month before NextGear allegedly financed Beltway Auto's purchase of the BMW and one month before Beltway Auto allegedly defaulted on NextGear's loan. Exh. 4, Freeman Dep. at 20:22–21:3; *id.* at 63:6–8. Furthermore, Mrs. Mahdavi purchased this BMW in the same manner as she purchased five previous vehicles from Beltway Auto. Exh. 6, Mahdavi Affidavit at ¶¶ 15–18.

   10. NextGear contends "[Mrs. Mahdavi] did not take any steps to arrange for the financing of the vehicle purchase with Pentagon Federal Credit Union at the time of purchase." NextGear Memo at p. 6, ¶ 38 (citing NextGear Exh. 8, Mahdavi Dep. at 28:19-22).  At the time of the Retail Purchase Agreement Mrs. Mahdavi put $23,000.00 down towards the BMW. Exh. 8, Mahdavi Dep. at 23:10–17; Exh. 6, Mahdavi Affidavit; Exh. 3, Retail Purchase Agreement; *see also* Bank of America Account Statement attached hereto as Exhibit 10.  Mrs. Mahdavi also took the very important step of obtaining a loan with Pentagon Federal Credit Union ("PFCU") for the subject BMW, and PFCU issued a check in the amount of $64,941.70 for Mrs. Mahdavi's purchase of the BMW. *See* Promissory Note between PFCU and Jodi Mahdavi ("PFCU Note"), attached hereto as Exhibit 11; PFCU Check in the amount of $64,941.70 ("PFCU Check"), attached hereto as Exhibit 12; *see also* Exh. 8, Mahdavi Dep. at 65:19–66:12.

### III. ARGUMENT

#### A. Standard of Review

Under FED. R. CIV. P. 56, summary judgment is appropriate only where there is "no genuine dispute as to any material fact." A genuine issue of material fact arises when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the facts in a light most favorable to the non-moving party if there is a genuine dispute as to those facts. *Sheridan v. Nationwide Ret. Solutions, Inc.*, 313 Fed. Appx. 615, 616 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A fact is determined to be material when it might affect the outcome of the case. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

#### B. Under the Va. UCC Mrs. Mahdavi is a Buyer in the Ordinary Course of Business.

##### 1. Determining who is a buyer in the ordinary course.

This is a case is a contest between a creditor of a vehicle dealership and a buyer of the inventory of that same dealership. NextGear lacks foundation for its conclusion that Mrs. Mahdavi is not a buyer in the ordinary course. It relies on hearsay as to what non-parties, mainly its defaulting borrower, say happened to the inventory.

Under the UCC, as enacted in Virginia, a good faith buyer of a good in the ordinary course of business is favored over the creditor of that business. *See e.g.*, *Marine Unlimited, Inc. v. Farnham Motor Co.*, 49 Va. Cir. 321 (1999); *Daniel v. Bank of Hayward*, 144 Wisc. 2d 931, 944 (1988).

Virginia Code section 8.1A-201(9) defines a "buyer in ordinary course of business" as:

> a person that buys goods in good faith, without knowledge that the sale

violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices . . . A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Title 8.2 may be a buyer in ordinary course of business.

### i. Mrs. Mahdav is a Good Faith Purchaser of the BMW.

Mrs. Mahdavi purchased the BMW in good faith. Virginia Code section 8.1A-201(20) defines good faith as "honesty in fact in the conduct or transaction concerned." Mrs. Mahdavi has been unequivocal in that she has done nothing wrong and merely purchased a vehicle that she wanted from the dealership where her husband worked. When the facts are viewed in the light most favorable to her, it is clear that there is a genuine dispute on this issue.

### ii. Mrs. Mahdavi Purchased the BMW Without Knowledge of the Rights of Another.

Mrs. Mahdavi purchased the BMW without knowledge that the sale violated the rights of another person in the BMW, as required by Virginia Code section 8.1A-201(9) to be a buyer in the ordinary course. Mrs. Mahdavi testified that she had no knowledge of Nextgear's claims against Beltway Auto or in the BMW, and NextGear has not cited any evidence to the contrary. When the facts are viewed in the light most favorable to her, it is clear that there is a genuine

dispute on this issue.

### iii. Mrs. Mahdavi Purchased the BMW in the Ordinary Course of Business.

To achieve buyer in the ordinary course status, one must purchase "[i]n the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices . . ." VA. CODE § 8.1A-201(9).

The evidence shows that Mrs. Mahdavi entered in to a contract with Beltway Auto to purchase the BMW for fair market value, put a $23,000.00 down payment down on the BMW, took out a loan with PFCU for the remaining purchase price, a loan on which she is still obligated to pay despite not possessing the BMW, paid Beltway Auto the purchase price, received a Maryland title for the BMW, and took possession of the BMW.  The evidence shows that she purchased the BMW in the same manner as she had purchased four other vehicles from Beltway Auto.  When the facts are viewed in the light most favorable to Mrs. Mahdavi, it is clear a genuine dispute exists as to this claim.

Despite contracting for the purchase of the BMW from an automobile dealership, paying the down payment, securing financing from an independent bank for the remaining balance, and receiving possession, NextGear asserts that the sale of the BMW to Mrs. Mahdavi was not in the ordinary course of business because Mrs. Mahdavi's husband was involved in the transaction. Also, NextGear states that Mrs. Mahdavi could not be a buyer in ordinary course because the sale did not happen at the physical location of the dealership.  To support its assertion that such a sale may not be in the ordinary course of business NextGear cites to cases from the 1960s and 1970s. *See e.g., Rhode Island Hosp. Trust Co. v. Leo's Used Car Exch., Inc.*, 314 F. Supp. 254

(D. Mass. 1970); *Al Maroone Ford, Inc. v. Manheim Auto Auction, Inc.*, 208 A.2d 290, 293 (Pa. Super. 1965).  NextGear cites no authority to support a claim that a purchaser of a vehicle in 2014 has to physically go to a dealership to consummate a purchase of the vehicle.  The authority cited by NextGear is not only outdated in today's world of internet sales and in an area where transactions occurring across state lines is neither unusual nor suspect, but are also easily distinguishable from this case.

For example, in *Rhode Island Hosp. Trust Co.*, a case from 1970, in applying UCC § 9-307, the court found that a sale between two merchants was not in the ordinary course when one factor was that the sale occurred where neither merchant did business. 314 F. Supp. 254 (D. Mass. 1970).  While such a sale between two merchants may not have been ordinary, Mrs. Mahdavi is not a merchant and the purchase of the BMW was substantially the same as several past transactions with Beltway Auto.

In *Al Maroone Ford*, a case from 1965, the court found that the purchase of the vehicle was not from a business "[i]n the business of selling goods of that kind, i.e. a dealer in automobiles . . ." as such, the sale was not in the ordinary course. 208 A.2d at 292.  This factor, that the business was not in the business of selling automobiles, weighed heavily in the court's determination.  *Id.* at 292–93.  Similarly, in *Genesee Regional Bank* the sale was not in ordinary course of business where the dealer was not authorized to deal in new cars yet twice sold a new vehicle as used to the same buyer through two different installment contracts. 799 N.Y.S.2d at 887.  Additionally, the court found that the buyer's knowledge of the bank's interest in the vehicle negated a finding of a status of buyer in ordinary course.  *Id.* at 888 (finding that the buyer, upon investigation and filing a complaint with the New York Department of Motor Vehicles who told her to bring a claim against the dealer, had knowledge that the sale was not in

ordinary course of business). Here, it is undisputed that Beltway Auto was in the business of selling cars. In fact, as a financer of Beltway Auto, NextGear would expect and need Beltway Auto to sell cars so that NextGear could be repaid for its loan.

In addition to contracting, paying for, receiving possession of the BMW, and title to the BMW, there are several other factors that weigh in favor of the sale of the BMW to Mrs. Mahdavi as being in the ordinary course of business. For example, prior to purchasing the BMW, she examined and test-drove it. Additionally, Mrs. Mahdavi purchased the BMW in substantially the same manner that she had purchased other vehicles from Beltway Auto. Mrs. Mahdavi took part in the essential aspects of the purchase and to her knowledge this sale comported with "the seller's own usual or customary practices." VA. CODE § 8.1A-201(9). When the facts are viewed in the light most favorable to Mrs. Mahdavi, one can reasonably draw a different conclusion from the conclusion asserted by NextGear.

### C. Mr. Mahdavi's Testimony is Not Vital to Resolve This Case.

NextGear asserts that Mr. Mahdavi's invocation of his Constitutional right is fatal, because without him Mrs. Mahdavi cannot show that she is a buyer in ordinary course. NextGear ignores the documentary and testimonial evidence that Mrs. Mahdavi has put forward that she completed the paperwork, she made the down payment, she procured the loan with PFCU, and that the Maryland title was issued to her. NextGear cites many cases about a party's invocation of the Fifth Amendment as creating a negative inference for the court to weigh, but Mr. Mahdavi is neither a party to this action nor is his testimony vital to the resolution of the disputed material facts of this case. *See e.g.*, *Wehling v. Columbia Broadcasting Sys.,* 608 F.2d 1084 (5th Cir. 1979); *Microsoft Corp. v. Silver Star Micro, Inc.*, No. 1:06-CV-1350-WSD, 2008 WL 115006, at *3 (N.D. Ga. Jan. 9, 2008); *United States v. One Parcel of Real Property,* 780 F.

Supp. 715 (D.Or. 1991).

Additionally, Mr. Mahdavi's testimony is not essential to resolution of this case. It would be inappropriate at this stage to conclude that a negative inference, if any, outweighs the other evidence presented by Mrs. Mahdavi in this case. In *LaSalle Bank*, the 7th Circuit Court of Appeals reversed the lower court's entry of summary judgment in a civil RICO case against defendants who exercised their 5th Amendment right not to testify stating that "even in a civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage . . . The entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995). The U.S. District Court for the District of Columbia applied this rationale when denying a motion for summary judgment in *SEC v. Huttoe*, 1998 U.S. Dist. LEXIS 23211 (D.D.C. 1998).

Mrs. Mahdavi has explained the process of the transaction, produced documentary and testimonial evidence of her purchase of the BMW, and has shown that she is a buyer in ordinary course. The disputed material facts presented in this case far outweigh any negative inference that may be caused by a witness' invocation of his Constitutional privilege.

**D. The BMW Was Taken Intentionally and in Breach of the Peace.**

It is undisputed that NextGear instructed its agent, PAR, to repossess the BMW from Mrs. Mahdavi's property. NextGear's own record shows that at the time it gave that instruction it knew the BMW had been sold. PAR breached the peace when it appeared at Mrs. Mahdavi's door at 1:30 a.m., engaged her in a confrontation, demanded the keys to her BMW, and did not cease the repossession when Mrs. Mahdavi objected to PAR's taking. When the facts are viewed in the light most favorable to Mrs. Mahdavi, there is a genuine dispute as to NextGear's assertion

that it had no knowledge of Mrs. Mahdavi's claim to the BMW.

NextGear cites to *Wallace v. Chrysler Credit Corp.*, which held that a repossession of a truck in the middle of the evening "was calculated to avoid a breach of the peace because the prospect of a confrontation with the plaintiff was less at 2 a.m. than it would have been in the daylight hours or in the early evening." 743 F. Supp. 1228, 1233 (W.D. Va. 1990) (applying the UCC, as adopted in Virginia, where a debtor defaulted on his loan and his creditor repossessed the collateral). The court also says "If, however, the debtor is present and makes an objection, the breach of the peace analysis comes to the fore: the creditor's agent must then desist." *Id.* at 1222. In the instant case, there are materially disputed facts surrounding PAR's repossession and NextGear's rights with respect to the BMW. *See* Mahdavi's Opposition to PAR's Amended Motion for Summary Judgment.

## IV. CONCLUSION

Mrs. Mahdavi, a buyer in ordinary course, is seeking the return of her BMW that was wrongfully taken by the Defendants. Based on the foregoing, there are material facts in dispute and NextGear Capital, Inc.'s Amended Motion for Summary Judgment should be denied.

Jodi C. Mahdavi<br>
By Counsel

LEVINE, DANIELS & ALLNUTT, PLLC
Heritage Square
5311 Lee Highway
Arlington, Virginia  22207
Telephone:  (703) 525-2668
Facsimile:  (703) 525-8393
jonathan.levine@levinedaniels.com

By      /s/ Jonathan E. Levine
    Jonathan E. Levine, Esquire
    VA Bar ID 45572
    *Counsel for the Plaintiff, Jodi C. Mahdavi*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2015 the foregoing Plaintiff's Opposition to Defendant NextGear Capital, Inc.'s Amended Motion for Summary Judgment was served via CM/ECF on the following: James Bragdon, Esquire, GALLAGHER, EVELIUS & JONES, LLP, 218 N. Charles Street, Suite 400, Baltimore, Maryland 21201, jbragdon@gejlaw.com, *Co-Counsel for NextGear Capital, Inc.;* Ashley W. Winsky, Esquire, MCGUIREWOODS, LLP, 310 Fourth Street, N.E., Suite 300, Charlottesville, Virginia 22902, awinsky@mcguirewoods.com, *Co-Counsel for NextGear Capital, Inc.; and* James N. Markels, JACKSON & CAMPBELL, P.C., 1120 20th Street, N.W., South Tower, Third Floor, Washington, D.C. 20036, jmarkels@jackscamp.com, *Counsel for P.A.R. Services, Inc.*

                                                 /s/ Jonathan E. Levine
                                                   Jonathan E. Levine, Esquire